*T. J. Sample*, for appellee.

———————⚫———————

THE MICHIGAN SOUTHERN AND NORTHERN INDIANA RAILROAD COMPANY *v.* HEATON.

COMMON CARRIER.—*Negligence.*—*Liability.*—A common carrier cannot, by contract, relieve himself from liability for the loss of goods delivered to him for transportation, which has been occasioned by his own negligence, or that of his agents or servants, or where such negligence has, in any degree, contributed to such loss. A common carrier can no more stipulate for a slight degree of negligence than he can for gross negligence.

APPEAL from the St. Joseph Common Pleas.

WORDEN, C. J.—This was an action by Heaton, the appellee, against the railroad company, to recover the value of

certain wheat delivered by him to the company, to be transported by the latter as a common carrier over her railroad from Bristol, the point of shipment, to Toledo, in the State of Ohio. The wheat, while thus in the possession of the company, and stored in one of her warehouses, and before being transported, was destroyed by fire. Judgment for plaintiff on the verdict of a jury.

The case comes before us on a bill of exceptions, showing the following facts: "It was proven, or admitted, that the defendant is a common carrier, as stated in the complaint, and that the plaintiff delivered to the defendant, at its station in Bristol, Indiana, $927\frac{53}{60}$ bushels of wheat, of the value of two dollars and three cents per bushel, to be transported to Toledo, in the State of Ohio, and that on the 12th day of September, 1867, the same was, together with the warehouse, consumed by fire. At the proper time, the defendant gave evidence proper to be submitted to the jury tending to prove the following facts, to wit: That said wheat was received by the defendant at said warehouse for such shipment under a special contract contained in the bill of lading, a copy of which is set forth in the complaint and in the third paragraph of the answer, and which contains, among other things, the following clause, to wit: 'This company shall not be held liable for any delay in the transportation or delivery of said grain, or for any injury from heat or dampness, or for any deterioration in quality, or loss by fire, or accident, or shrinkage, while in possession of the company;' and that the defendant used care and diligence in guarding said wheat from damage or loss by fire. And evidence was also given by the plaintiff tending to prove want of care and diligence on the part of the defendant in guarding said wheat against loss by fire, but the case was so left by the evidence that the extent or degree of such care, or the want of it, was a question for the consideration of the jury." And thereupon the defendant asked the following instructions, which were refused:

"First, if the jury find, from the evidence, that the wheat in controversy was received by the defendant for shipment only under the terms and conditions mentioned in the receipts or bills of lading set forth in the complaint and in the answer, and which has been given in evidence, then the defendant is to be held liable in regard to the wheat only to the same extent as a private carrier for hire would be, and not as a common carrier; that is to say, in such case, the defendant was bound only to use such diligence in guarding the wheat against danger of loss by fire as any prudent man commonly uses to save his own goods from loss by fire. It (the defendant) was required to use in regard to the same only ordinary diligence, and the defendant can be held liable only for the want of that degree of care, and not for the extraordinary care required of common carriers.'

"Second, if the jury find from the evidence that the wheat in controversy was received by the defendant for shipment only under the conditions mentioned in said receipt, and that such conditions were at the time understood and assented to by the plaintiff, then the defendant, as to guarding the wheat against loss by fire, was not bound to use extreme care or diligence, such as is ordinarily required of common carriers, but was bound to use only that degree of care and diligence in that respect which ordinarily prudent men commonly exercise in regard to their own affairs of similar character, and is liable only for the want of that degree of care."

The court gave the following charge:

"This is an action brought against the Michigan Southern and Northern Indiana Railroad Company as a common carrier, for the value of a quantity of wheat delivered to them to be carried from Bristol to Toledo. The wheat was stored in the warehouse of the company for transportation, but before it was moved forward, the building with its contents was destroyed by fire. The railroad company as a common carrier are regarded by the law as insurers of the property intrusted to them, and are legally responsible for acts against which they could not provide from whatever cause arising,

the acts of God and the public enemy only excepted. The loss or damage to property in their possession to be carried, is, of itself, sufficient proof of negligence—the rule of law being, that everything is negligence which the law does not excuse—so that in all cases but those just mentioned as excepted, their faultlessness is no discharge. This responsibility of a common carrier may, however, be limited by contract. In this case, it is stipulated between the parties that the defendant is not to be responsible, among other things, for any loss by fire: but this general provision in the contract does not relieve the defendant from their responsibility as a common carrier, if the loss by fire was caused by negligence or want of care on their part. So that if the jury find, from the evidence before them, that the property mentioned in the complaint was lost or destroyed by the want of care or negligence of the defendant, they will find for the plaintiff, the value of the property lost or destroyed. But if the property, while in the warehouse, was not destroyed in consequence of their want of care or negligence, you will find for the defendant."

The following second charge, on this point, was given at the request of the plaintiff:

"2. Notwithstanding the limitation of the company's liability for loss by fire contained in the receipt given, still the company is liable for a loss by fire if there was carelessness or negligence of the company or its employees in connection with the fire and contributing to the loss."

The appellant duly excepted to the rulings of the court in charging and in refusing to charge as asked.

The question is presented by the record, arising out of the charges given and those refused, whether a common carrier is exempted, by such special contract, from liability for the loss of goods by fire, where the loss has been occasioned by any degree of negligence on the part of the carrier which has contributed to the loss.

The counsel for the appellant do not claim that the carrier would be exempt from liability for a loss by fire occur-

ring from the gross carelessness, or want of ordinary care, on the part of the carrier or his agents or servants; but they claim that the carrier, under such a contract, is only bound to use such degree of care in guarding the property against loss by fire as ordinarily prudent men would use under similar circumstances; in other words, such care as the law requires of an ordinary bailee, or private carrier for hire.

The appellee, on the other hand, claims that the carrier, under such contract, is liable for the loss of the goods by fire, where the loss has occurred through any degree of negligence on the part of the carrier, his agents or servants, which has contributed to the loss. We think it must be regarded as settled by the numerous authorities on the subject, that a common carrier may, by special contract, relieve himself to some extent from the strict liability which the law imposes upon him as such common carrier. *York Company* v. *Central Railroad*, 3 Wal. 107. But while this is the case, we are of opinion that a common carrier cannot, by contract, relieve himself from liability for the loss of goods delivered to him for transportation, which loss has been occasioned by his own negligence or that of his agents or servants, or where such negligence has in any degree contributed to the loss. And it matters not what degree of negligence has thus occasioned or contributed to the loss. A carrier can no more stipulate for a slight degree of negligence than he can for gross negligence. A common carrier, and especially one exercising and enjoying corporate franchises, granted, as is supposed for a public purpose and for the public benefit, cannot, in our opinion, be permitted to so far disregard the duty which he or it owes to the public, as to stipulate for any degree of negligence in the discharge of duty as such common carrier. It is not simply a question between the carrier and the single individual with whom the contract is made. It is a question of public interest on the one hand, and public duty on the other. If such contract can be made and is to be held valid in one instance, it follows that if made in all cases, it must be held valid in all cases. The

carrier may thus force these terms upon the shipper, who must either accept them, or forego the transportation of his goods by means of the common carrier, or resort to his action against the carrier for refusing to transport his goods without such stipulations, which practically would be an inadequate remedy, rather than resort to which, the shipper would generally submit to the carrier's terms. The common carrier may thus divest himself of that character, and force the public, through its necessities, to intrust the transportation of goods to carriers irresponsible for negligence.

The case of *N. Y. Steam Nav. Co.* v. *Merchants' Bank*, 6 How. U. S. 344, is relied upon by the appellant as establishing that under such contract the appellant would only be liable for gross neglect, or want of ordinary care. We do not think it clear that the case establishes the position assumed. William F. Harnden had shipped on the steamboat Lexington, to be transported from New York to Stonington, in Connecticut, a quantity of coin. On the way, a fire broke out, which destroyed the boat, and the money was lost. The court state the agreement under which the coin was to be transported, as follows: "The special agreement, in this case, under which the goods were shipped, provided that they should be conveyed at the risk of Harnden; and that the respondents were not to be accountable to him or to his employers, in any event, for loss or damage."

The court say: "If it is competent at all for the carrier to stipulate for the gross negligence of himself, and his servants or agents, in the transportation of the goods, it should be required to be done, at least, in terms that would leave no doubt as to the meaning of the parties." Why was the court speaking of gross negligence? Simply because it was a case of gross negligence with which it had to deal. There was no question whether a less degree would have been sufficient to render the respondents liable. The court was speaking of the case as it existed, and as one of gross negligence. This is clearly shown by what is said, on page 385, on the subject. It is there said: "We think there was

great want of care, and which amounted to gross negligence, on the part of the respondents, in the stowage of the cotton," etc.

The following paragraph, on the same page, would seem to indicate that if there was any fault on the part of the respondents, they would be liable:

"It is, indeed, difficult, on studying the facts, to resist the conclusion, that, if there had been no fault on board in the particulars mentioned, and the emergency had been met by the officers and crew with ordinary firmness and deliberation, the terrible calamity that befell the vessel and nearly all on board would have been arrested. We are of opinion, therefore, that the respondents are liable for the loss of the specie, notwithstanding the special agreement under which it was shipped."

The same court, in the case of *The Steamboat New World* v. *King,* 16 How. U. S. 469, seemed inclined, for some purposes, at least, to repudiate all distinctions in the degrees of negligence, as ordinarily classified. Mr. Justice CURTIS, in delivering the opinion of the court, remarks: "The theory that there are three degrees of negligence, described by the terms slight, ordinary, and gross, has been introduced into the common law from some of the commentators on the Roman law. It may be doubted if these terms can be usefully applied in practice. Their meaning is not fixed, or capable of being so. One degree, thus described, not only may be confounded with another, but it is quite impracticable exactly to distinguish them. Their signification necessarily varies according to circumstances, to whose influence the courts have been forced to yield, until there are so many real exceptions that the rules themselves can scarcely be said to have a general operation. * * If the law furnishes no definition of the terms gross negligence, or ordinary negligence, which can be applied in practice, but leaves it to the jury to determine, in each case, what the duty was, and what omissions amount to a breach of it, it would seem that imperfect and confessedly unsuccessful attempts to define that duty had better be abandoned."

We, however, do not wish to be understood as deciding that in no case does the distinction in the degrees of negligence exist.

The case of *Graham* v. *Davis*, 4 Ohio St. 362, very fully sustains the view which we take of the question before us. We quote the following paragraph from the opinion of the court in that case, delivered by Judge RANNEY:

".The whole may be summed up in this: the carrier, by agreement with the owner, may exonerate himself from responsibility for losses, arising from causes over which he has no control, and to which his own fault or negligence has in no way contributed. But in doing so, he does not cease to be a common carrier, nor in any manner change his relation to the public as such; and he can only excuse himself for a failure to deliver the goods entrusted to him by showing that, without his fault, he has been prevented by some one of the causes recognized by law, or specifically provided for in the contract. This case requires very little to be added, as to the degree of care exacted of the common carrier. We have already said, that he is not at liberty to stipulate for any degree of negligence, and that a loss from negligence cannot be within the stipulated exceptions to his liability."

The case of *Steinweg* v. *The Erie Railway*, 43 N. Y. 123, is also directly in point. There the bill of lading released the carrier from liability for damage or loss by fire or explosion of any kind. It was held that the carrier was not released from liability for damage by those means, resulting from his own negligence. And it was held that the carrier, a corporation, "was liable, if there was negligence on its part, without regard to any supposed distinctions or degrees of negligence."

This is the doctrine of the Supreme Court of the United States, also, as is to be inferred from what is said in the case in 3 Wal. above cited. There Mr. Justice FIELD, in delivering the opinion of the court, after having made a very clear statement of the duties and responsibilities resting upon common carriers, proceeds as follows: "The owner of

goods may rely upon this responsibility imposed by the common law, which can only be restricted and qualified when he expressly stipulates for the restriction and qualification. But when such stipulation is made, and it does not cover losses from negligence or misconduct, we can perceive no just reason for refusing its recognition and enforcement." Had it been the intention of the court to discriminate between different degrees of negligence, and to hold that some could and some could not be contracted for by the carrier, they would not have used the general term negligence, which includes all classes, whether slight or gross, as expressive of what could not be contracted for.

There may be, and probably are, some cases, as well as some *dicta*, in the books, at variance with the doctrine on which we stand in this case; but we are satisfied that it is in accordance with principle, and is supported by very respectable, if not the great weight of authority.

Effect can be given to the clause in the bill of lading stipulating that the company shall not be liable for any loss by fire or accident. By the law, independently of any contract providing otherwise, the carrier is chargeable for all losses except such as may be occasioned by the act of God or the public enemy. He insures against all accidents which result from human agency, although occurring without any fault or neglect on his part. Had the wheat been lost by fire, without any negligence on the part of the company, the clause in the bill of lading would, doubtless, have exempted the company from the liability therefor, which the law would otherwise have imposed.

We are of opinion that the court committed no error, either in giving or withholding charges, and that the case went to the jury on the correct theory of the law.

The judgment below is affirmed, with costs and five per cent. damages.

*J. B. Niles*, *W. Niles*, and *J. O. Norton*, for appellant.

*J. H. Baker*, *J. A. S. Mitchell*, *W. A. Woods*, and *J. D. Arnold*, for appellee.