THE ST. LOUIS AND SOUTH-EASTERN RAILWAY COMPANY
*v.* SMUCK ET AL.

RAILROAD.—*Bill of Lading.*—*Construction of.*—Where a railroad company received freight to be transported partly by rail and partly by water, and it was stipulated in the bill of lading, that " it is especially agreed and understood that the company is not responsible ⁂  ⁂  for loss or damage on the lakes or rivers, unless it can be shown that such damage or loss occurred through the negligence or default of the agents of the company ;" and the freight, after being carried by the defendant, was placed upon a wharf-boat, awaiting the arrival of a packet wherein to ship it, and the wharf-boat sunk without the fault of the railroad company, and the freight was lost;

*Held,* that the loss was not one occurring on the lakes and rivers within the meaning of the bill of lading.

*Held,* also, that the bill of lading should be construed to mean, that the carrier was not to be responsible, in the absence of negligence, for loss or damage occurring in the navigation of the lakes or rivers.

SAME.—Contracts not clear in their meaning, by which common carriers seek to avoid the responsibility which the law imposes upon them, should be construed most strongly against them.

From the Vanderburgh Circuit Court.

*A. Iglehart* and *J. E. Iglehart,* for appellant.

*C. Denby* and *D. B. Kumler,* for appellees.

WORDEN, J.—Complaint by the appellees against the appellant, as follows, viz.:

" The said Charles Smuck, Gabriel Smuck, Joseph Dosch, and John C. Shoemaker, plaintiffs, complain of the said defendant, the St. Louis and South-Eastern Railway Company, and say, that prior to the 9th day of September, 1873, the said plaintiffs were the owners of a mill, called the Superior Mills, located at Cannelton, Indiana, and defendant owned, operated, and ran a railroad extending from St. Louis, Missouri, to Evansville, Indiana, which railroad crossed the Illinois Central at Ashley, in Illinois ; that the plaintiffs were engaged in buying wheat at Sandoval, in the State of Illinois, for shipment over the said Illinois Central Railroad to Ashley, and thence to Cannelton, Indiana, over the said railroad of the defendant from Ashley to Evansville, and thence by river to

Cannelton, Indiana ; that being desirous of making an engagement to ship wheat as aforesaid with said defendant, the plaintiffs entered into negotiations with said defendant, and on the 9th day of September, 1873, the said defendant made to the plaintiffs the following written proposal, which was accepted by said plaintiffs, and which reads as follows :

" ' EVANSVILLE, IND., September 9th, 1873.

" ' CHAS. SMUCK : Rate on wheat in sacks, in car-load lots, Sandoval to Cannelton, Indiana, river from Evansville, thirty-three cents per one hundred pounds. Answer to St. Louis, if accepted. Rate will be good as long as navigation for regular large Louisville boats.				A. E. SHRADER.

" ' 44 D. D. Paid.						G. F. A.'

" The plaintiffs, in pursuance of said contract, delivered to the Illinois Central Railroad Company forty thousand pounds of wheat, being three hundred and thirty-two sacks of wheat, containing seven hundred and fifty bushels, of the value of one thousand two hundred dollars, to be safely carried to Ashley, Illinois, and there delivered to the defendant under said contract above written, and to be by said defendant thence transferred to Cannelton, Indiana, and then delivered to the plaintiffs for a certain reward to be by the plaintiffs paid on that behalf ; that at the time of the delivery to the said Illinois Central Railroad Company, said company delivered to the plaintiffs the bill of lading, which reads as follows :

" ' GRAIN CONTRACT.

" ' SANDOVAL STATION, September 15th, 1873.

" ' Received from Chas. Smuck, grain in bulk, in apparent good order, by the Illinois Central Railway Company, consigned as below, to be delivered as marked and described in the margin, subject to the conditions herein contained, and payment of freight at special rate of twenty-six cents to Evansville, Indiana, per one hundred pounds, and such other expenses or charges as may have accrued on said grain.

" ' It is especially agreed and understood, that the company is not responsible for loss by unavoidable leakage or shrinkage of said grain, or damage of any kind occasioned by delay

from any cause or change of weather, or for damage or loss by fire, or for loss or damage on the lakes or rivers, unless it can be shown that such damage or loss occurred through the negligence or default of the agents of the company ; and it is further expressly understood, that for all loss and damage occurring in the transit of said grain, the legal remedy shall be against the particular carrier or forwarder only in whose custody the same may actually be at the time of the happening thereof, it being understood that the said Illinois Central Railroad Company assumes no other responsibility for its safety or safe carriage than may be incurred on its own road.

" ' The said Charles Smuck, in consideration of said special rate, hereby expressly agrees that said grain is not to be weighed by said railroad company at the place of shipment, nor to be delivered at any other place than the one above named ; said railroad company may deliver the grain upon its arrival at place of destination, and the shipper will furnish the revenue stamp required by law for this contract.

" ' CHARLES SMUCK & Co., Consignor.

" ' L. NOWLAND, Agent,

" ' [Five Cent Stamp.]    I. C. R. R. Co.

| Marks and Consignee. | No. | Description of Articles. |
| --- | --- | --- |
| Superior Mills, | 1 | Car Wheat, 174 bags. |
|       Cannelton, Ind., | 1 | do.    do.    158   do. |
| Via Evansville, Ind. | | Shipper's load'g and count. Car No. 4014. |
| | | "    "    714. |

" And the plaintiffs say that the said Illinois Central Railroad Company did duly deliver said wheat to said defendant, at Ashley, Illinois, and the said defendant accepted and received the same under said contract above set out, and thereby agreed to comply with the conditions thereof, and to deliver said wheat to plaintiffs at Cannelton, Indiana, in consideration that plaintiffs had agreed to pay thirty-three cents per hundred pounds for transporting the same from Sandoval, Illinois, to Cannelton, Indiana ; and plaintiffs say that said wheat duly arrived at Evansville, Indiana, having been trans-

The St. Louis, etc., R. W. Co. *v.* Smuck *et al.*

ported over the defendant's said road ; but the said defendant, regardless of its duty as a common carrier, did not take proper care of said wheat, but wholly neglected to do so, and placed the same upon its wharf-boat at Evansville, Indiana, then lying in the Ohio river at Evansville, Indiana ; and while said wheat was so on said wharf-boat, the said wharf-boat sunk in said river, and the greater part of said wheat, to wit, five hundred bushels thereof, was wet, damaged, and became worthless, and thirty-eight sacks were delivered in a damaged condition, the injury thereto amounting to one hundred dollars ; and plaintiffs say that the value of said wheat so damaged amounted to six hundred dollars ; wherefore they demand judgment for seven hundred dollars, and other proper relief.

" DENBY & KUMLER,<br>" Attorneys for Plaintiffs."

To this complaint the defendant filed an answer in two paragraphs, in the following form :

" Par. 1. Said defendant says that it admits that the plaintiffs were engaged in buying wheat at Sandoval, in the State of Illinois, for shipment over the Illinois Central Railroad to Ashley, and thence to Cannelton, Indiana, over the defendant's road to Evansville, thence by river to Cannelton, Indiana.

" And the defendant says, by the course of transportation the said wheat so shipped by these plaintiffs was transported in cars from said Sandoval, over said Central Railroad and the defendant's road, to Evansville, and then transferred to the defendant's wharf-boat, and there kept until the arrival of the next packet from Louisville, and there laden on said packet and carried to Cannelton ; that all freight transported by the defendant over its road before and after the 9th day of September, 1873, to Evansville and thence to points on the Ohio river above Evansville, was transported to said wharf-boat in the manner aforesaid, and carried over and upon the same, and thence laden upon the packets in the manner aforesaid, which was the usual, ordinary, and only manner of transporting

freight from Sandoval to Cannelton aforesaid, all of which was, on the day and year aforesaid, well known to the plaintiffs.

" The defendant also admits the transmission to the plaintiffs of the telegram aforesaid, and that the plaintiffs, in pursuance of the terms of said telegram, delivered to the said Central Railroad Company the said wheat mentioned in said complaint, according to the tenor and effect of the bill of lading then and there executed by said company. The defendant also admits that said Central Railroad Company then and there executed the bill of lading, of which a copy is set out in the complaint, and transported said wheat to Ashley, and delivered the same to said defendant; and the defendant avers that it took possession of said wheat, with a duplicate of said bill of lading, and then and there undertook to complete said contract of affreightment according to the true intent and meaning of said bill of lading, and according to the usage aforesaid. And the defendant says that it safely transported said wheat over its said road to the city of Evansville, and placed the same upon said wharf-boat then and there lying afloat in the Ohio river safely and securely moored to the defendant's wharf, the same being then and there safe, sound, and seaworthy, there to await the arrival of the next packet, which was due the next day after the lading of said wheat in the usual manner of transportation as aforesaid; and that while the said wheat was thus upon said wharf-boat awaiting shipment upon the said packet, without any unusual or unnecessary delay, said wharf-boat, without any fault or negligence on the part of the defendant, but on account of some latent defect which could not be seen, and could not have been discovered by ordinary care and diligence, sank in the Ohio river, whereby the wheat was damaged in the manner complained of in the complaint; and the defendant denies that said loss or damage resulted from any disregard of duty by the defendant, or any want of proper care, or any negligence of duty on the part of the said defendant in the premises.

" Par. 2. Said defendant, for further answer, says that said

wharf-boat was sunk in the Ohio river by unavoidable acci-
dent and without any negligence or want of care or diligence
on the part of the said defendant; wherefore said defendant
says that said loss and damage did not render the defendant
liable on said bill of lading.

"ASA & J. E. IGLEHART,

"Attorneys for Defendants."

Demurrers for want of sufficient facts were sustained to the
two paragraphs of answer, and exception. Final judgment
for the plaintiffs below.

The only question made here relates to the ruling on the
demurrers.

It is assumed in the argument of counsel for the appellant,
the St. Louis and South-Eastern Railway Company, that she
can, under the circumstances, avail herself of the stipulations
contained in the bill of lading executed by the Illinois Cen-
tral Railroad Company to Smuck. And it is argued that the
loss was within the class for which it was stipulated that the
company should not be liable. Both these propositions must
be maintained, or the defence must fail. The appellees con-
trovert both propositions.

We think it unnecessary to decide the first, but note the
following authorities, cited by counsel for the appellees, having
some bearing upon the question : *Maghee* v. *The Camden &
Amboy R. R. Company*, 45 N. Y. 514; *The Ætna Ins. Co.* v.
*Wheeler*, 5 Lansing, 480.

Assuming, without deciding, that the first proposition is
with the appellant, we proceed to the question whether the loss,
as shown by the pleadings, was one for which it was stipu-
lated that the company should not be liable. The wheat, it
appears, arrived safely at Evansville, and was there placed
upon a wharf-boat floating in the river, but moored to the
wharf, to await the arrival of the next packet in order for
shipment thereon to Cannelton, and while thus upon the wharf-
boat, the latter, from some unknown cause, sank in the river
and damaged the wheat/ The stipulation in the bill of lading
affecting this question is as follows.:

"It is especially agreed and understood, that the company is not responsible * * * for loss or damage on the lakes or rivers, unless it can be shown that such damage or loss occurred through the negligence or default of the agents of the company."

Negligence is negatived, and the question is whether the loss took place on the river, within the meaning of the stipulation set out. It is established in this State, that a common carrier may, by express contract, relieve himself to some extent from the strict liability which the common law imposes upon him, no negligence being stipulated for. *The Michigan, etc., R. R. Co.* v. *Heaton*, 37 Ind. 448.

But, in our opinion, contracts not clear in their meaning, by which common carriers seek to avoid the responsibility which the law imposes upon them as such, should be construed most strongly against them. In this case, the carrier was not to be responsible, in the absence of negligence, for loss or damage " on the lakes or rivers." This was intended to convey the idea, and should, as we think, be construed to mean, that the carrier was not to be responsible, in the absence of negligence, for loss or damage occurring in the navigation of the lakes or rivers.

The wheat, when it was lost, was stored on a wharf-boat, which floated, to be sure, upon the waters of the river, awaiting the arrival of the packet on which it was to have been shipped to its port of destination. The wharf-boat served as a convenient storehouse for the wheat while awaiting shipment; but the navigation of the river had not been commenced in respect to the wheat, when it was lost; nor had it been shipped upon the craft by which it was to have been transported. It was not lost or damaged " on the river," within the meaning of the contract.

The demurrers to the paragraphs of answer were, therefore, correctly sustained.

The judgment below is affirmed, with costs.