Bartlett v. The Pittsburgh, Cincinnati and St. Louis Railway Company.

Filed March 27, 1884.

---

No. 8669.

BARTLETT v. THE PITTSBURGH, CINCINNATI AND ST. LOUIS RAILWAY COMPANY.

PRACTICE.—*Harmless Error.*—*Demurrer.*—Where it appears by the record that a pleading was found to be untrue, the Supreme Court will not consider whether there was error in overruling a demurrer to it.

RAILROAD.—*Common Carrier.*—*Pleading.*—*Variance.*—*Practice.*—Where a complaint against a common carrier of goods, for failure to deliver goods promptly, counts upon a mere common law liability, and the evidence shows that the goods were received under a special written contract, the variance is fatal, and in such case the overruling of a demurrer to an answer is a harmless error.

SAME.—*Negligence.*—*Special Contract.*—The common law liability of a common carrier may be limited by special contract, except such as results from the carrier's negligence.

SAME.—*Liability for Delay in Shipment.*—*Riots.*—Suit by a shipper against a railroad company, on a special contract for the shipment of live hogs, whereby the shipper in terms assumed the risk of delay in transportation. It was alleged in the complaint that before entering into the contract riots existed, hindering the movement of freight, of the extent of which the shipper, being ignorant, applied to the agent of the defendant at L. to learn if the defendant would ship live hogs thence to East Liberty, notwithstanding the riots; that the defendant, knowing the extent of the riots, by its agent, handed to the plaintiff a copy of a general order of the defendant, authorizing its agents to receive and for-

Bartlett v. The Pittsburgh, Cincinnati and St. Louis Railway Company.

ward such property, whereupon the special contract was entered into and the hogs shipped for East Liberty under it; that upon reaching Columbus, Ohio, they were stopped by reason of riots, and delayed ten days, unloaded, kept in unhealthy pens, whereby they died, lost weight, etc. Another paragraph differed only in averring that the defendant's employees abandoned the train and were engaged in the riot in consequence of a reduction of their wages. Another was also similar save that it was silent as to the general order to receive and ship such property and as to the riots, averring a failure to deliver the hogs at East Liberty within a reasonable time; that there was ten days' delay at Columbus, whereby, etc. Answer: 1. That on arrival at Columbus there was a riot at East Liberty beyond the power of the authorities to suppress, destroying the defendant's railroad, depots and cars, making it impossible safely to take the hogs to East Liberty ; that the delay at Columbus was necessary during the riot ; that the defendant's servants were not engaged in the riot; that the hogs were properly unloaded and cared for at Columbus; that they died from disease contracted before delivery for shipment; and that there was no riot when they were received for shipment.   2. That by reason of riot, not by defendant's employees, it was unsafe at the time to carry beyond Columbus ; that within twenty-four hours after the riot ceased the hogs were delivered at East Liberty ; that at Columbus they were unloaded and cared for by the plaintiff; that those which died were diseased when shipped.   3. Same as the second, with the averment that there was no negligence of the defendant.

*Held,* that each paragraph of the answer was good, showing that the delay was not caused by any negligence of the defendant.

PRACTICE.—*Judgment on Facts Found, Notwithstanding General Verdict.*—Unless there be a motion below for judgment on the jury's answers to interrogatories, notwithstanding the general verdict, no question concerning the right to such judgment can arise in the Supreme Court.

HARMLESS ERROR.—*Evidence.*—The rejection of admissible evidence, which it is clear would not have changed the result, is a harmless error.

From the Henry Circuit Court.

*M. E. Forkner,* for appellant.

*J. H. Mellett, E. H. Bundy, W. D. Foulke* and *J. L. Rupe,* for appellee.

HAMMOND, J.—This was an action by the appellant against the appellee to recover damages occasioned by delay in the shipment of hogs from Lewisville, this State, to East Liberty, Pennsylvania.   The complaint was in six paragraphs; the answer was in fifteen paragraphs, of which the first and tenth

were general denials. There was a reply in denial and also by affirmative paragraphs. A trial by jury resulted in a verdict for the appellee. Judgment was rendered on the verdict over the appellant's motion for a new trial and exceptions. The consideration of alleged errors will be confined to those discussed in the appellant's brief.

The appellant demurred for the want of facts to each of the special paragraphs of answer. The demurrer was sustained to the second, third and fourth paragraphs and overruled as to the others. Complaint is made as to the overruling of the demurrer to the fifth, eighth, ninth, eleventh, thirteenth and fourteenth paragraphs of the answer. The jury, in answer to interrogatories, found specially that the facts relied upon as a defence in the fifth and eleventh paragraphs of answer were not true. This rendered the overruling of the demurrer to those paragraphs harmless, even if such ruling was erroneous. A party has no ground of complaint to the overruling of his demurrer to a pleading if, upon trial, it affirmatively appears, from the record, that the pleading was found not to be true. State, etc., v. Julian, 93 Ind. 292.

The first paragraph of the appellant's complaint alleged that, on July 21st, 1877, the appellant delivered to the appellee, a common carrier, 265 head of hogs at Lewisville, to be transported and delivered to the appellant at East Liberty, within a reasonable time; that appellee failed to do this, but carried the hogs to Columbus, Ohio, an intermediate station, and there delayed and kept them in pens, in unhealthy places, for twelve days, whereby fifty-eight died and the remainder shrank in weight, etc., to the appellant's damage, etc. The ninth paragraph of answer was addressed to the first paragraph of the complaint. The first paragraph of the complaint, as will be observed, was based upon the appellee's liability as a common carrier, and not upon any written contract. But it was shown in evidence, and specially found by the jury, as a fact in their answers to interrogatories, that the shipment of appellant's hogs was made

under three written contracts. It is settled by the decisions of this court, that where suit is brought against a common carrier to recover damages for the non-delivery of goods received by it for carriage, and the complaint merely alleges a breach of the common law duty of such carrier, if the evidence shows that the goods were received for carriage under a special written contract, which was not declared upon, the variance is fatal and the plaintiff can not recover. *Indianapolis, etc., R. R. Co.* v. *Remmy*, 13 Ind. 518; *Jeffersonville, etc., R. R. Co.* v. *Worland*, 50 Ind. 339; *Lake Shore, etc., R. W. Co.* v. *Bennett*, 89 Ind. 457; *Hall* v. *Pennsylvania Co.*, 90 Ind. 459. As the appellant could not, in any event, under the evidence, have recovered upon the first paragraph of his complaint, the overruling of a demurrer to an answer thereto was an error, if any, which did the appellant no harm.

The eighth paragraph of the answer was addressed to the first, fourth, fifth and sixth paragraphs of the complaint. So far as it was intended as an answer to the first paragraph of the complaint, it is disposed of by what is said above respecting the ninth paragraph of answer. The thirteenth and fourteenth paragraphs of answer were directed to the fourth, fifth and sixth paragraphs of the complaint.

The fourth paragraph of the complaint charges that prior to the shipment of the hogs riots existed on the appellee's road, interfering with the movement of freight, and the appellant, being ignorant of their extent, applied to the appellee's agent at Lewisville, on July 21st, 1877, to ascertain if the appellee would ship his hogs from that place to East Liberty, nothwithstanding said riots, and that the appellee, knowing the extent of said riots, delivered, by its agent, to the appellant a copy of a general order of the appellee addressed to its agents as follows:

"RICHMOND, IND., July 20th, 1877.

"ALL AGENTS—You can now receive and forward stock and perishable freight for Pan-Handle and East *via* P. R. R.

(Signed)   "J. F. MILLER."

Bartlett *v.* The Pittsburgh, Cincinnati and St. Louis Railway Company.

It is averred that upon receiving the above order, the appellant, by his agent, Thomas W. Hall, executed to the appellee the following written agreement:

"The undersigned hereby contracts, agrees and binds himself, and for the owners of the stock shipped in cars Nos. 5171, 4371, 5041, on the P., C. & St. L. R. R., at Lewisville, Indiana, station, on the 21st day of July 1877, to be transported to East Liberty by the Pittsburgh, Cincinnati and St. Louis Railway Company, in consideration of the said company agreeing to transport the said stock at the special rates and conditions given in local tariff, to load, unload, feed, water, and attend to the stock himself; and having examined the cars, to assume all risks of transportation, both as to the stock and the individual who may travel with such stock to attend to it, being all risks arising from any defect in the body of the cars, imperfect doors and fastenings, overloading, or from vicious and restive animals, delays, and all risk of the escape and robbery of any portion of said stock, or of loss or damage from any other cause or thing not resulting from defective trucks, wheels or axles. And it is hereby acknowledged that 24,000 pounds is the maximum weight allowed by the railroad company to be loaded in any one car. It is agreed that the company shall not be responsible for any delays at terminal points, nor for delays at points where stock is to be delivered to connecting lines, caused by their refusal or inability to receive it, after a tender of delivery has been made by this company. Signed at Lewisville, this 21st day of July, 1877.

"Witness:   J. B. Guerin.

"T. W. Hall."

It is averred that on the faith of the said order the appellant shipped 265 hogs under said contract; that the appellee did not carry the hogs to East Liberty within a reasonable time, but transported them to Columbus, where they were stopped by the riots, unloaded, placed in unhealthy pens, and there kept for twelve days by the appellee, being ten days

longer than usual, whereby sixty of the hogs died and others lost in weight, etc.

The fifth paragraph of the complaint is the same as the fourth, with the additional averments, that at Columbus the appellee's employees abandoned the train and uncoupled the cars; that there was a riot which originated between the Pennsylvania Railroad Company and the appellee on the one side and their employees on the other, and was occasioned by a reduction of wages; that appellee's employees were engaged in the riot; and that by reason thereof there was a delay of twelve days at Columbus.

The sixth paragraph of the complaint is the same as the fourth, except that the allegations as to the riot and the order signed by Miller are omitted; the breach averred being that the appellee did not within a reasonable time transport said hogs to East Liberty, but carried them to Columbus and placed them in unhealthy pens for ten days, etc.

The eighth paragraph of the answer alleges that the appellee, within a reasonable time, carried the hogs to Columbus; "that at the time of the arrival of the train of the defendant containing said hogs at said Columbus, there was a violent, forcible and tumultuous riot prevailing at said city of East Liberty, to such an extent that the same was beyond the power and control of the civil and military authorities;" that the rioters were engaged in the destruction of the appellee's property, including its road-bed, depots, and rolling stock, so that it was unsafe and impossible to deliver the appellant's hogs at said East Liberty; that the rioters were not the agents or servants of the appellee; that by reason of the riot the appellant's hogs were necessarily detained at Columbus during the riot, which continued five days, and also detained seven days thereafter on account of the accumulation of freight; that the hogs were unloaded and put in pens and properly taken care of; that fifty-eight of them died from disease contracted before they were delivered to the appellee and from natural causes, without the fault or negligence of the appel-

Bartlett v. The Pittsburgh, Cincinnati and St. Louis Railway Company.

lee; and that the riot was not in existence when the hogs were received by the appellee for shipment.

The thirteenth paragraph of the answer alleges the transportation of the hogs to Columbus, an intermediate station, within a reasonable time; that upon their arrival there was a riot at East Liberty and Columbus; that prior to the shipment, as was then known to the appellant, there was a riot, but not such as to prevent the running of the appellee's trains; that by reason of the riot it was unsafe to proceed further than Columbus; that within twenty-four hours after the riot was subdued the hogs were delivered; that the fifty-eight hogs which died at Columbus were sick and diseased when shipped; and that the hogs were unloaded, fed and cared for by the appellant, as it was his duty to do under his contract of shipment.

The fourteenth paragraph of the answer is substantially the same as the thirteenth, except that it avers that the hogs died from disease contracted before shipment, and from natural causes, and not by the appellee's negligence. This paragraph, as well as the thirteenth, averred that the rioters were not employees of the appellee.

The appellant's counsel, in his brief, in reference to the fourth and fifth paragraphs of the complaint, says: "The theory upon which they were drawn, and what I now contend for them, is, that the legal effect of the contract of shipment, and the written order of the company delivered by defendant's agent to plaintiff, construed together in the light of the relative conditions and contract of the parties, was that the defendant assumed the risk of the delay and damage by reason of said riot; and that having caused the plaintiff to ship his hogs by the assurances or said order, the defendant is now estopped from claiming any immunity from damage occasioned by delay in consequence of said riot. The defendant answered by the thirteenth, fourteenth and amended eighth paragraphs of answer. In these pleas it pleads the riots as an excuse and justification for the delay. They are bad, for the reason

that under the complaint to which they are pleaded, the appellee assumed the risks of said riots, and is estopped from claiming anything by reason of them, as above stated."

We do not think that the order and contract referred to are susceptible of the construction contended for. The order of Miller to the appellee's agent, a copy of which was delivered to the appellant, simply authorized such agents to receive for shipment live-stock and perishable property.

The appellant, according to the fourth and fifth paragraphs of the complaint, knew of the existence, but not of the extent of the riots. With this knowledge, he, by his agent, executed the contract whereby he assumed certain risks, among them, delays of transportation. Taking the order and contract together, in the light of the surrounding circumstances, their obvious meaning was that the appellee accepted for shipment the appellant's hogs, he assuming the risks referred to. One of these risks was that of the delays complained of.

We do not think that any reasonable construction of the order and contract would lead to the conclusion that the appellee, in the shipment of the hogs, intended to insure against losses from delays in transportation, occasioned without its fault or negligence. Indeed, the strict liability of common carriers, where they are without fault or negligence, does not seem to extend to losses from delays in transporting live-stock and perishable property, though such delays are not caused by the act of God or the public enemies. *Pittsburgh, etc., R. W. Co.* v. *Hollowell,* 65 Ind. 188 (32 Am. R. 63); *Pittsburgh, etc., R. R. Co.* v. *Hazen,* 84 Ill. 36; S. C., 25 Am. Rep. 422. But even if such liability existed in the absence of contract, it is settled that a common carrier may, by express contract, relieve itself from its common law liability except as to consequences of its own negligence. *Adams Ex. Co.* v. *Reagan,* 29 Ind. 21; *Adams Ex. Co.* v. *Fendrick,* 38 Ind. 150; *St. Louis, etc., R. W. Co.* v. *Smuck,* 49 Ind. 302.

In the present case, it does not become necessary for us to decide whether the appellee, in the absence of a contract limit-

Bartlett v. The Pittsburgh, Cincinnati and St. Louis Railway Company.

ing its real or supposed common law liability, would be responsible for the losses complained of by the appellant, if such losses were in no way attributable to its fault or negligence. The appellant shipped his stock under an express contract which relieved the appellee from liability in consequence of delays in transportation, and it is not liable for losses occasioned by such delays, if it was without fault or negligence itself.

The facts specially pleaded in the 8th, 13th and 14th paragraphs of the answer are sufficient to show that the delays and consequent losses occurring in the shipment of the appellant's hogs were not the result of the appellee's fault or want of care. These paragraphs of answer were good, and there was no error in overruling the demurrers thereto.

It is insisted by counsel for the appellant, that, under the facts specially found by the jury in answer to interrogatories, he was entitled to judgment for $687.50, notwithstanding the general verdict in favor of the appellee. The facts specially found by the jury do not appear to us to be inconsistent with their general verdict; but if the inconsistency contended for existed, and if the appellant, by the proper motion, had been entitled to judgment on the special findings, notwithstanding the general verdict, we could not, on this ground, reverse the judgment. The question whether a party is entitled to judgment on special findings, in the face of the general verdict, is only presented by motion therefor in the trial court. *Toledo, etc., R. W. Co.* v. *Craft*, 62 Ind. 395; 1 Works Pr., section 864. No such motion was made in this case.

The order signed by Miller, directing the appellee's agents to receive and forward stock, etc., was offered in evidence by the appellant, but its introduction was not permitted by the court. As a part of the transaction of the shipment of the appellant's hogs, no very good reason occurs to us for its exclusion from evidence. At the same time, however, we are

unable to see how the appellant was harmed by the ruling. The order, at most, when delivered to the appellant, was simply a declaration by the appellee of its willingness to receive and forward his stock. That it did receive and forward it is a fact not in dispute. As already adverted to, there was nothing in this order that in any way qualified the contract of shipment.

The evidence tended to show that the hogs were shipped in five cars; that by direction of the appellant's agent, T. W. Hall, three of the cars were consigned to said Hall, one car to J. W. Dennis and one to H. P. Gough. Dennis and Gough, at the time of shipment, each executed to the appellee a contract exactly like that executed by Hall. These contracts were put in evidence by the appellee over the appellant's objection. It is insisted that it does not appear from the evidence that Dennis and Gough were agents of the appellant, with authority to execute these contracts. Their agency, however, we think was sufficiently shown from the circumstances of the transaction, to warrant the court in admitting in evidence the contracts referred to.

Complaint is made of the submission of certain interrogatories to the jury, and of the refusal of the court to require the jury to make their answers to the interrogatories more specific. It would add unnecessarily to the length of this opinion to examine each question and answer alluded to; and it is sufficient to say, generally, that we are satisfied that no injustice was done in any of the respects named.

It is claimed that the verdict of the jury was not sustained by sufficient evidence. The facts specially found by the jury in answer to interrogatories were substantially as follows:

The appellant, by his agents, executed the three written contracts, introduced in evidence, dated July 21st, 1877, and signed, respectively, by Hall, Dennis and Gough; that Hall told appellee's agent at Lewisville, to consign one load of hogs to Dennis and one to Gough; that the agent did this,

and Dennis and Gough signed the two contracts bearing their signatures; that the appellant was not the owner of the hogs referred to in the contract signed by Dennis, but was the agent of the owner thereof; that about thirty hogs died out of the three car loads mentioned in the contract signed by Hall, and ten in each car load consigned to Dennis and Gough; that the hogs were detained at Columbus by reason of the riots at Pittsburgh and along the line of the appellee's road, obstructing the running of trains; that the riots were of such magnitude that it was impossible for the appellee to suppress them or move its trains; that the appellee carried the appellant's hogs as far as Columbus on the road to East Liberty within a reasonable time; that at the time of the arrival at Columbus there was a tumultuous riot at Pittsburgh, engaged in the violent destruction of property, which the civil and military authorities were unable to suppress, and which riot rendered it unsafe to ship the appellant's hogs to East Liberty prior to the time they were actually sent; that the appellant knew by newspaper reports at the time the hogs were shipped that a riot was in progress at Pittsburgh; that Columbus was the most suitable place for the detention of the appellant's hogs; that the hogs were moved to East Liberty as soon as practicable after the riot was over, and the road cleared away; that the delay at Columbus was occasioned by forcible resistance from mobs; that the appellee at all times during the riot had a sufficient number of servants and employees to man and operate its trains, and sufficient rolling stock to ship the hogs to East Liberty; that appellant's hogs were not diseased when shipped; that considering the circumstances of the riot and consequent obstruction, twelve days was a reasonable time in which to deliver the appellant's hogs; that Hall necessarily expended $100 in taking care of the hogs and himself at Columbus during the detention; that appellee did no negligent or wilful wrong by which damages were caused to the appellant; that fifty hogs were not delivered at East Liberty, weighing two hundred and fifty pounds each,

worth $5.50 per cwt.; that there was thirty pounds shrinkage in each of the hogs delivered at East Liberty.

The evidence tended to prove the foregoing facts, and also that all the hogs that were shipped from Lewisville arrived at Columbus, and that all that were shipped at Columbus arrived at East Liberty; that the hogs which did not arrive at East Liberty died during the delay of ten days at Columbus; that while so delayed the hogs were cared for, under the direction of Hall, the appellant's agent, by proprietors of stockyards, who were not engaged, nor in any way employed, by the appellee; and that some of the rioters had previously been in the employment of the appellee, but that such employment ceased when they engaged in the riot. We think that the verdict of the jury was sufficiently sustained by the evidence.

Complaint is made of the instructions of the court to the jury, but the questions of law thus involved have been considered in what has been said relating to the pleadings. We are of the opinion that the trial court, in its charges to the jury, correctly stated the law as applicable to the issues and the evidence.

Judgment affirmed, with costs.

