Filed Sept. 22, 1885.

---

No. 12,357.

ROSENFELD v. THE PEORIA, DECATUR AND EVANSVILLE
RAILWAY COMPANY.

COMMON CARRIER.— Railroad.—Contract Limiting Liability.— Negligence.— Fraud.—A common carrier may, by contract, limit his liability as an insurer, but he can not thus relieve himself from the consequences of his own negligence or fraud.

SAME.—Fixing Value of Goods by Carrier.— When Binding upon Shipper.— Burden of Proof.—In order that a common carrier may, by fixing the value of goods received for transportation, limit his liability, he must show that the shipper had knowledge of such fixing of value and for a sufficient consideration consented thereto, or that his statements and conduct justified the carrier in so fixing the value.

SAME.—Bill of Lading.—Stipulation as to Measure of Liability.—Arbitrary Fixing of Value by Carrier.—Where it is expressly stipulated in a bill of lading that "in the event of loss or damage under the provisions of this agreement, the value or cost at the point of shipment shall govern the settlement of the same," the insertion by the carrier, without the knowledge or consent of the shipper, of almost illegible abbreviations which are interpreted by the carrier to mean "Leaks and outs excepted, $20 railroad valuation," will not bind the shipper, and he may recover the actual value of the goods at the point of shipment.

From the Vanderburgh Superior Court.

C. L. Wedding, for appellant.

C. Denby and D. B. Kumler, for appellee.

ZOLLARS, J.—Appellant delivered to appellee a barrel of whiskey to be transported and delivered to James O'Brien at Litchfield, Illinois. It was never delivered, and appellant brought this action to recover its value. When it was delivered to appellee, appellant received from its agents a bill of lading. In that, there is a statement of the name and residence of the consignee, and a description of the article as " 1 b'll whiskey, of 400 pounds weight." Following these statements there is a blank, followed by printed stipulations, one of which reads thus: " In the event of loss or damage under the provisions of this agreement, the value or cost at the point of shipment shall govern the settlement of the same." In the blank there are letters and figures which witnesses say are " L. & O. Ex. $20 R. R. val.," but they are so run together, and illegible, that it would be impossible for any one, not knowing for what they were intended, to decipher them all. The interpretation of these characters, as given by the agents of the railway company is, " Leaks and outs excepted, $20 railroad valuation."

The contention in behalf of the railway company is, that because of those characters in the bill of lading, appellant is limited in his recovery to $20 and the interest on that amount from the time the whiskey should have been delivered. The court below adopted this theory, rendered judgment for the appellant for $21.40, although the barrel of whiskey was shown to have been worth $96.

On the other hand, appellant contends that the printed stipulations as to the amount of recovery should control, and that if the characters in the blank space, with the interpretation given them by witness, should be regarded as a part of the contract, it would be such a contract as the courts should not uphold. Thus we have the questions presented by the argument of counsel:

*First.* Can a railway company make and enforce a contract limiting the amount of recovery against it for the loss of articles received by it for transportation, as a common carrier?

*Second.* Do the characters in the blank in any way have the force and effect of a contract binding upon appellant?

These in their order: It is the settled law of this State, abundantly supported by authority and reason, that while common carriers may, by contract, limit their liability as insurers, they can not, by contract, relieve themselves from the consequences of their own negligence or fraud. The law will not allow a common carrier to contract to be safely negligent or dishonest. *Michigan Southern, etc., R. R. Co.* v. *Heaton,* 37 Ind. 448 (10 Am. R. 89); *Ohio, etc., R. W. Co.* v. *Selby,* 47 Ind. 471 (17 Am. R. 719); *St. Louis, etc., R. W. Co.* v. *Smuck,* 49 Ind. 302; *Adams Express Co.* v. *Fendrick,* 38 Ind. 150; *Indianapolis, etc., R. R. Co.* v. *Allen,* 31 Ind. 394. See Lawson Contracts of Carriers, p. 31, *et seq,* and the numerous cases there cited.

In the case of *Railroad Co.* v. *Lockwood,* 17 Wall. 357, after holding that common carriers can not contract against their liability for negligence, the court reached the following conclusions:

"*First.* That a common carrier can not lawfully stipulate for exemption from responsibility when such exemption is not just and reasonable in the eye of the law.

"*Secondly.* That it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for the negligence of himself or his servants."

Under these rules, and the elaborate reasoning upon which they are based, may common carriers arbitrarily, or by contract, place a value upon articles received for carriage, and in this way limit the amount of recovery against them in case of loss? If they may contract against all liability for loss by means other than their own negligence or fraud, of course they may contract for the amount of recovery in such cases. But in case of a loss through their negligence or fraud, the same reasons, at first view, would seem to exist against contracts limiting the amount of recovery as exist against contracts for total exemption; and hence some of the courts have

held such contracts invalid. *Kansas City, etc., R. R. Co.* v. *Simpson,* 30 Kan. 645 (46 Am. R. 104); *United States Ex. Co.* v. *Backman,* 28 Ohio St. 144; *Black* v. *Goodrich Trans. Co.,* 55 Wis. 319 (42 Am. R. 713); *Moulton* v. *St. Paul, etc., R. W. Co.,* 31 Minn. 85 (47 Am. R. 781).

If, without any representation of value by the shipper, or a request of him for a statement of value, and without notice and contract, and a valuable consideration, the carrier should place a value upon the articles received for carriage, that would not bind the shipper. In such case, he would clearly have the right to recover the full value of the articles lost by the carrier.

If, on the other hand, for the purpose of getting reduced rates, the shipper should place a value upon the articles for carriage, or if by any kind of artifice he should induce the carrier to place a lower value upon the articles, and thus get reduced rates, it seems to be settled by the weight of authority that he could not recover beyond the value so fixed by him, or the value which by deceit he caused the carrier to fix. To hold otherwise would be to enable the shipper to take advantage of his own wrong.

Carriers have the right to fix their charges according to the value of the article to be carried. The greater the value the greater the responsibility and liability in case of loss. For assuming these, the carrier is entitled to charge increased compensation. Lawson Cont. of Carriers, pp. 88, 89, and cases there cited.

If the shipper may, by false statements or artifice, deceive the carrier as to value, and thus get lower rates, and still recover from the carrier the full value, he is enabled to consummate a wrong upon the carrier which should not be sustained by the courts. *Graves* v. *Lake Shore, etc., R. R. Co.,* 137 Mass. 33 (50 Am. R. 282); *Hart* v. *Pennsylvania R. R. Co.,* 112 U. S. 331.

To hold the carrier liable in such a case for the full value of the article beyond the representation of the shipper, would

seem to be neither just nor reasonable; and if neither just nor reasonable, such a holding is not demanded by any considerations of public policy.   This limited liability is not regarded as in conflict with the general rule, that common carriers can not by contract limit their liability for loss occurring through their negligence, but as an exception to it.  2 Greenl.· Ev., section 215;   Lawson Cont. of Carriers, p. 87, and cases there cited ; Story Bailments, sections 565, 567 ; Cole v. Goodwin, 19 Wend. 251.

Another rule of law, that seems to be settled by the weight of authority, is that if the carrier claims that, by contract or the misconduct of the shipper, his common law liability has been limited, the burden is upon him to clearly show it, and all such contracts will be interpreted most strictly against the carrier.

In the case of 'St. Louis, etc., R. W. Co. v. Smuck, supra, this court said :  " But, in our opinion, contracts not clear in their meaning, by which common carriers seek to avoid the responsibility which the law imposes upon them as such, should be construed most strongly against them."   Indianapolis, etc., R. R. Co. v. Cox, 29 Ind. 360; Lawson Contracts of Common Carriers, sections 135, 246, and cases there cited.   And so, too, that carriers may, by fixing value, limit this common law liability, it must be shown that the shipper had some kind of knowledge of such·fixing of value, and for a sufficient consideration consented thereto, or that his statements or conduct justified the carrier in so fixing the value, as we have before stated.

Tested by these rules of the law, how stands the case before us?   As we have seen, there is an express and definite stipulation in the bill of lading, that in case of loss, the value or cost at the point of shipment shall measure the amount of· the recovery.   To overthrow this specific stipulation, appellee relies upon the figures and letters in the blank, which, as we have seen, are so written that no one could read or in-

terpret them, unless he had previous knowledge of their import. Schouler Bail. Including Carriers, p. 468. We think that it would not be reasonable to hold that these shall overthrow the express and plainly printed stipulation above referred to, and that the only proper and reasonable construction of the contract is, that it fixes the amount of recovery in case of loss at the value of the barrel of whiskey at the point of shipment.

The evidence shows that the agents of appellee put the letters and figures upon the bill of lading without the knowledge or consent of appellant. He had no understanding or knowledge of their import, except what they of themselves import, and that was practically nothing. He made no representations as to the value of the barrel of whiskey, nor was he asked to make any.

The testimony by the agents of appellee tends to show that less freight was charged than would have been charged had the value been stated at a greater amount; but there is no evidence that appellant was a party to such an arrangement, nor that he had any knowledge of it. There is evidence that he had accepted several like bills of lading for barrels of whiskey shipped, but they of themselves would not furnish any information that the carrier, by such letters and figures, was limiting its liability, first, because the figures and letters could not be intelligently deciphered by the shipper, and second, if they could, they would not be sufficient to overthrow and destroy the plainly printed stipulation that the damages should be measured by the value at the point of shipment. We do not regard this as a case to be settled upon a conflict of the evidence, but as a case where there is no evidence at all to bind the shipper to the value so fixed by the carrier. For these reasons, we think that the judgment should be reversed. Other questions are discussed by counsel, but it does not seem necessary that we shall now decide them.

The judgment is reversed with costs, with instructions to

the court below to sustain appellant's motion for a new trial, and proceed in accordance with this opinion.

Filed Sept. 24, 1885.