Gertrude WOOTEN, Plaintiff-Appellee,

v.

PENNSYLVANIA RAILROAD COMPANY, Defendant-Appellant.

No. 13189.

United States Court of Appeals Seventh Circuit.

March 20, 1961.

George C. Forrey, III, Indianapolis, Ind., for appellant.

Richard L. Gilliom, Gilliom, Armstrong & Gilliom, Indianapolis, Ind., of counsel, for appellee.

Before HASTINGS, Chief Judge, and KNOCH and CASTLE, Circuit Judges.

HASTINGS, Chief Judge.

Gertrude Wooten, plaintiff-appellee, brought this diversity action against defendant-appellant Pennsylvania Railroad Company for personal injuries plaintiff received which were allegedly caused by the negligence of defendant. The case was tried before a jury which returned a verdict for plaintiff. Defendant's motions for a directed verdict and for judgent notwithstanding the verdict were denied, and defendant appealed.

The first issue in this appeal is whether there was sufficient evidence for the trial court to send the case to the jury to determine the question of defendant's negligence. The nature and extent of plaintiff's injuries and the amount of her recovery are not contested here.

Plaintiff was injured by a piece of baggage which fell from a rack above her as she was traveling by train from Indianapolis, Indiana to Jacksonville, Florida. The piece of luggage jiggled loose from the rack while the train was traveling over a stretch of rough freight track in a forced detour caused by an earlier accident on the main passenger track. Plaintiff was injured at approximately 5:00 a. m. on the morning of December 23, 1957, as her train was in the vicinity of the Georgia-Alabama boundary. Plaintiff had boarded the train, taken her reserved seat and was asleep in it when the piece of baggage fell and struck her.

One eye-witness gave her recollection of the accident in her deposition. She was wide awake and seated one row back and across the aisle from plaintiff at the time. The witness saw a ladies' overnight case bounce out of the luggage compartment above, hit plaintiff on the shoulder, and then fall to the floor. At the time no one was handling, touching, or was in the vicinity of the luggage, nor had anyone handled any nearby luggage. The witness did not remember any unusual speed or lurching of the train at the time of the accident.

Plaintiff had purchased her round trip ticket to Jacksonville from Indianapolis Union Railway Company, defendant's selling agent. The ticket was for passage on the "South Wind" train, a through service from Chicago, Illinois to Miami, Florida provided since 1940 by defendant, the Louisville and Nashville Railroad Company, and the Atlantic Coast Line Railroad Company. The ticket that plaintiff purchased indicated on its face that defendant was the "Issuing Carrier." Each portion of the ticket had printed upon it the following limitation:

"Subject to tariffs, Selling Carrier is Agent only—*not responsible beyond its line,* except as law imposes liability for baggage. Non-transferable." (Emphasis added.)

The tariffs referred to in the ticket limitation were on file with the Interstate Commerce Commission at Washington, D.C. and with the Indianapolis Union Railway Company at Indianapolis, Indiana and contained the following statement:

"Rule 3. *Responsibility of Issuing Carrier.* In issuing tickets and checking baggage under this tariff for passage over the lines of other carriers participating herein, *the issuing carriers act only as agents and are not responsible beyond their own lines* [emphasis added], except as such responsibility may be imposed by law with respect to baggage."

Defendant relies on the language of the ticket and the tariffs to restrict its liability to accidents occurring on its own line.

The South Wind traveled from Chicago to Louisville (with one irrelevant exception) on track leased and maintained by defendant. On the first leg of the trip, the locomotive crew, brakemen and conductor were employees of defendant. From Louisville, Kentucky to Montgomery, Alabama the conductor, locomotive crew and brakemen were employees of Louisville and Nashville, and the train traveled over that railroad's tracks.

At the time of the accident, the South Wind was traveling over tracks owned and maintained by Atlantic on the third stage of the trip, from Montgomery to Jacksonville. The locomotive crew and brakemen of the train were employees of Atlantic, and a conductor employed by Atlantic was in general charge of the train. At this point, there were eighteen cars on the South Wind, including two dining cars owned by defendant, ten Pullman cars (defendant owned six), four coach cars (defendant owned one), defendant's lounge-coach car, and a baggage car owned by Florida East Coast Railway Company. Three diesel locomotives were used on the entire trip and were owned by defendant.

The coach car in which plaintiff was injured was owned by Florida East Coast. Two coach attendants were on duty and in charge of this car from Chicago to Jacksonville. *These two attendants were employed and paid by defendant.* Both wore uniforms and caps bearing defendant's insignia. Their duties included placing baggage on overhead racks in the coach cars and securing it during transit to keep it from falling. In addition, they had the responsibility to check the floors for water or other slippery materials, to keep the cars clean and to help passengers on and off the train with their luggage. At the time of the accident one attendant was taking his rest period and was not in the coach in question. The second, on-duty attendant, who had the responsibility for five coach cars during the other's rest period, was then in a separate coach car, cleaning the cars and restrooms. He stated that he had been cleaning the coach in which plaintiff was riding approximately one-half hour before the accident and had not noticed that the luggage was insecure at that time. After being notified of the accident, the on-duty attendant aided plaintiff; he found the overnight case on the floor and lifted it back onto the luggage rack.

In these circumstances plaintiff advanced three theories under which it contended that defendant was liable for plaintiff's injuries. All three theories were presented to the jury which re-

turned a general verdict finding against defendant. Plaintiff's first theory charged that defendant's own coach employees were negligent in allowing the luggage to remain loose on the baggage racks during sleeping hours. Second, it argued that defendant was in partnership with Atlantic and Louisville and Nashville in the operation of the South Wind. Finally, as the issuing carrier, plaintiff asserted that defendant operated the South Wind to Jacksonville as a principal and had an agency relationship with the other two carriers. As to the final two theories, plaintiff contended that defendant's partners or agents operated the South Wind in a negligent manner causing the baggage to be shaken off the luggage rack, striking and injuring plaintiff while she was asleep and unable to protect herself.

An examination of the record in this case clearly reveals that the issue of defendant's negligence was properly submitted to the jury. We have said that in "reviewing the ruling of a trial court on a motion for a directed verdict or for judgment notwithstanding the verdict, we must determine whether the evidence justifies the submission of the case to the jury. Such a motion should be denied where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions. Valdes v. Karoll's Inc., 7 Cir., 1960, 277 F.2d 637, 638, and cases cited therein." Threatt v. United States Steel Corporation, 7 Cir., 1960, 283 F.2d 411, 413.

■■ The issue of the alleged negligent conduct of defendant's coach employees—who had the responsibility for securing baggage in the racks—was a matter of disputed fact to be resolved by the jury. Further, defendant's argument that these two employees were "loaned" to Atlantic, thereby making Atlantic the sole principal liable for the injury, was a matter of disputed fact. Here, plaintiff offered proof that these employees were hired, trained and paid by defendant and, in the absence of orders from the Atlantic conductor, performed their duties according to defendant's training and instruction. Whether these employees were acting in the course of their employment by defendant was a factual issue properly submitted to the jury. Defendant's proof clearly did not foreclose reasonable men from reaching differing conclusions on this issue.

■ In addition, there was sufficient evidence to take the case to the jury on the issues of agency and partnership. Defendant's brochure advertised the South Wind as a through train service provided by defendant and Louisville and Nashville. An agreement among the three participating railroads indicated that the South Wind was operated "in joint service." Certain of defendant's dining car, lounge and coach employees continued on duty on the train on the entire trip to Jacksonville. The fare for the ticket was divided among the three railways. Defendant retained the entire one dollar special charge for a reserved seat from Indianapolis through to Jacksonville. A schedule of rental payments for the use of diesel locomotives was arranged. The working agreement included provisions for use of track and an allocation of cost and expenses of maintaining locomotives and other general expenses. In addition there were indemnity agreements between the parties relating to the operation of the locomotives and to the liability arising from the dining service provided by defendant on the South Wind. Plaintiff offered sufficient evidence to make the issues of agency and partnership matters of disputed fact and thereby precluded a directed verdict in defendant's favor.

■ The record reveals there were genuine issues of fact as to the negligence of defendant's coach employees and Atlantic's employees. It further indicates a dispute as to the status of defendant's coach employees and the rela-

tionship between defendant, Atlantic, and Louisville and Nashville. If the jury was convinced that the alleged negligence existed and could be imputed to defendant, then defendant's disclaimer of liability printed on its ticket and in its tariff could not absolve it from liability occurring beyond its own line. Rosenfeld v. Peoria, Decatur & Evansville Railway Company, 1885, 103 Ind. 121, 123, 2 N.E. 344. 10 Am.Jur. (Carriers) § 1694, p. 428. Defendant's reliance in this regard upon the case of Louisville & N. R. Co. v. Chatters, 1929, 279 U.S. 320, 49 S.Ct. 329, 73 L.Ed. 771, is misplaced. There, a directed verdict in favor of an issuing carrier was proper in a tort suit against it and the connecting carrier where there were no allegations or proof of negligence by its employees or of such relationship that negligence could be imputed to the issuing carrier. These very issues were in dispute in the case before us.

Defendant contends that the trial court erred in giving certain instructions to the jury. Each of these instructions was properly objected to at trial. Defendant does not assert that the instructions are erroneous as a misstatement of the law, but states that they were inapplicable and prejudicial in the circumstances of this case. The court's instructions relating to the partnership and agency relationship between defendant and Atlantic, the status of defendant's two coach employees, and their alleged negligence were objected to on the ground that there was insufficient evidence to submit such questions to the jury. However, we have held above that on the evidence in the record those issues were matters of disputed fact and that the trial court properly submitted them to the jury. These instructions were properly given.

Next, defendant objected to an instruction which correctly stated the duty of care of common carriers under Alabama and Georgia law and required the jury to apply the proper standard to defendant's conduct, depending upon the state in which the jury found the accident occurred. Defendant asserted that "it was a matter of pure speculation as to which state the accident occurred in, that the jury should not be permitted to speculate on the facts, and it followed that the Court was speculating on what the law was." We disagree. The parties had stipulated that the accident happened either in Alabama or in Georgia. The accident occurred at nighttime, and it was difficult to establish its precise location. There was deposition testimony that the accident occurred in Alabama, and the stipulation established that the train stopped in Georgia to allow a physician to board to attend to plaintiff's injuries. This testimony presents a substantial factual basis upon which to instruct the jury. In any event, the standards of care established by Alabama and Georgia in these circumstances are not materially different,[1] and the placement of the accident is not a crucial element in plaintiff's recovery.

■ Defendant asserts that it was error for the court to give an instruction on *res ipsa loquitur* in the circumstances here. We have said that such instruction is "a rule which permits or requires an inference of negligence to be drawn from the fact of an accident plus the circumstances which characterize the accident. It is an evidential inference, which will carry a case to the jury, but is not binding upon the jury * * *." Eker v. Pettibone, 7 Cir., 1940, 110 F.2d 451, 455. Cochran v. Pittsburgh & L. E. R. Co., D.C.N.D.Ohio 1923, 31 F.2d 769, 771. We have examined the record and find there was sufficient factual evidence of defendant's control of the coach car and the train itself to make appropriate the instruction defendant objects to.

Finding no error, the judgment of the district court is

Affirmed.

---

1. In Alabama the law requires common carriers of passengers to exercise "the highest degree of care, skill, and diligence." Alabama G. S. R. Co. v. Hill, 1891, 93 Ala. 514, 521, 9 So. 722, 724, 725. In Georgia the law requires "extraordinary diligence." Southern Ry. Co. v. Reeves, 1902, 116 Ga. 743, 744, 42 S.E. 1015.