GERMAN v. THE CHICAGO & NORTH-WESTERN RAILROAD CO.

1. **Common carrier**: RAILROADS: TRANSPORTATION OF STOCK. Even if, in the absence of contract, the full liabilities of common carrier do not attach to railroad companies when engaged in the transportation of live stock, they must nevertheless exercise ordinary care in such employment.

2. ———: CONTRACT: NUDUM PACTUM. Where a contract for the shipment of stock, stipulating that the owner was to assume all risk of injury done by the cattle to each other and also that the owner should be permitted to pass on the train to take charge of them, was not signed until after four of the cars had been shipped without notice to him: *Held* that such contract was *nudum pactum* and did not relieve the defendant from the necessity of exercising ordinary care.

*Appeal from Clinton District Court.*

THURSDAY, MARCH 19.

PLAINTIFF claims five hundred dollars damages on account of injuries to cattle shipped on defendant's road from Maquoketa to Chicago.

The cause was referred to Robert T. T. Spence, Esq., who submitted the following findings of fact:

" 1. That the injury and damage, alleged in the 1st count of plaintiff's said amended petition occurred to the cattle in one of twelve cars of cattle and hogs, which were shipped by plaintiff, and transported by defendant, under and upon the written contract offered in evidence by defendant, attached to the testimony reported herewith, and marked exhibit 'A.'

" 2. That said contract contains all the agreements made by plaintiff and defendant, with reference to said shipment, except that it is a part of said contract that cattle and hogs shall not be loaded in the same car, yet six cars of this shipment were loaded with cattle and hogs, in the same car, and were so transported by defendant for the plaintiff, and defendant has thereby made a modification of said contract in that respect by ratification.

" 3. That the cattle in one of said twelve cars, transported by defendant, under said contract, being in good order and

condition when loaded, and being properly loaded, were found upon arrival at the place of destination, to be injured, four of them being dead, and the rest bruised and depreciated in value; that these injuries were done by said cattle to themselves and to each other, and occurred from causes which plaintiff, in said contract, consented that defendant should not be liable for, and agreeing therein to assume the risk of injury from said causes himself, it being agreed therein by defendant that plaintiff should be passed upon said train to take care of said cattle.

" 4. That cattle while being transported in railway cars are liable to get down, and if not assisted to their feet, may be trampled upon, injured and killed, and such as remain standing in a car where there are some down, may be bruised and injured.

" 5. That in the transportation of cattle by railroads it is want of ordinary care, and negligence to have no one on the train charged with the care of them.

" 6. That four cars of cattle and hogs, being part of the twelve cars shipped, under said contract, were transported by defendant from Maquoketa to Clinton, and three of said four cars of cattle and hogs were transported by defendant from Clinton to the place of destination without the owner or any one for him being on said train to take care of said cattle, and without any one on said train charged with the care of them, and that said injury occurred to the cattle in one of said three cars.

" 7. That plaintiff was prevented from going or sending any one with said four cars of cattle and hogs by the negligence of defendant in the performance of the duties incumbent upon said defendant under said contract, and having so prevented the plaintiff, the defendant did not exercise ordinary care, and was negligent in transporting said four cars of cattle and hogs without having any one on the train charged with the care of said cattle, whereby the plaintiff's cattle in one of said four cars was injured, and the plaintiff was thereby damaged in the sum of three hundred fifty-four and eight one-hundredths dollars."

German v. The Chicago & North-western R. R. Co.

The referee also reported that the evidence disclosed, amongst other, the following circumstances:

"The plaintiff, on January 2nd, 1872, was furnished with twelve empty cars, he had ordered the day before, for this shipment. Some of them were brought up to Maquoketa on the regular freight, about 11 o'clock A. M. and the balance by an extra freight which arrived at Maquoketa at about 1 o'clock P. M. At about half past 1 o'clock, he commenced loading cars with cattle and hogs, of which he had sufficient to load six cars. He had completed the loading of four of these, and was engaged in loading the fifth, when the regular freight agent coupled to four of them, drew them off the side track, from the shoot where plaintiff was loading, to the switch east of the shoot, then backed them to the station, passed the cattle yard, and then attached them to the regular freight, which soon thereafter proceeded east to Clinton. At this time the plaintiff was engaged in loading the balance of his cars; the contract had not been signed and no pass given him. * * *

* * * * While it appears that plaintiff was so situated that he could have seen what disposition was being made of the four cars, if he had been attending thereto, and while the testimony tends to show that he commenced loading for the regular freight, yet it also shows that he knew there would be an extra train.

And on the other hand, the testimony tends to show that no agent or employe of defendant at Maquoketa knew how or when plaintiff's stock was to go, whether by the regular or the extra, or part of it on each of these trains until a dispatch was received from the train dispatcher at Clinton, directing the conductor of the regular freight to "take what cars are ready and go on."

The referee further reports that it was the intention of plaintiff to accompany the cattle, and that he did go with the remaining eight cars, and that he had no notice that the four cars were going by the regular train; also that he had before shipped cattle on defendant's road.

The material portions of exhibit A, referred to in the findings of the referee, are as follows:

"When live stock is shipped, the owner or his agent is to feed, water, and take care of his stock, at his own expense and risk, and is to assume all risk of injury or damage that the. animals may do to themselves or to each other, or which may arise from delay of trains.

"Stock will only be taken by the car load at the prices fixed under the table of special rates, when a contract is executed by the special agent and shippers, to be loaded and unloaded, watered and fed by the owner, and at his risk in all respects, except as specified in form of contract or receipt below.

"Two or three cars of stock will entitle the owner or driver to pass on the train with the stock to take care of it. Four cars and upwards, two men in charge to pass on stock train, which is the maximum number that will be passed on any train from one consignor or party.    *    *    *    The agent at the station where the stock is loaded will give no passes, but must enter on the back of the contract the name or names of the persons who are actually entitled to pass free with the stock, which is the authority of the conductor to pass them."

The contract or receipt signed by the agent of defendant and plaintiff, and referred to above is as follows: "Received of R. D. German, this day, twelve cars containing cattle and hogs, more or less, to be delivered at South Branch Station, at special rates enumerated below and advanced charges. In consideration of which, and for other valuable considerations, it is hereby mutually agreed that said company shall not be liable for loss by jumping from the cars, delay of trains, or any damage said property may sustain, except as may result from a collision of the train, or when cars are thrown from the track in course of transportation. The printed tariff of this company, so far as it applies, an extract of which is recorded above, is hereby declared to be an essential part of this contract. To be fed and taken care of by owner."

The referee submitted also the following conclusions of law:

"1.    That nothwithstanding the absence of any contract rule, receipt, or regulation, the full liabilities of common car-

riers do not exist with respect to railroads when engaged in the transportation of live stock."

" 2. That the written contract of shipment relied upon by defendant herein, so far at least as it stipulates that the owner of live stock shipped should assume all risk of injury or damage that the animals may do to themselves, or to each other, and that he or his agent is to feed, water, and take care of his stock, at his own expense and risk, in connection with the further stipulation, in substance, that the agent of defendant should enter upon the back of said contract the names of the persons actually entitled to pass free with the stock, which is the authority of the conductor to pass them, is a legal and valid contract, and not contrary to the provisions of Chapter 113 of the Acts of the 11th General Assembly of Iowa."

" 3. That said contract does not exempt said defendant from the duty of exercising ordinary care and prudence in the transportation of said live stock."

The referee directed that judgment be entered against the defendant for $354.08, and costs.

The defendant excepted to the third conclusion of law, and to certain of the findings of facts.

The court overruled the exceptions, and entered judgment for plaintiff. Defendant appeals.

*E. S. Bailey*, for appellant.

*E. T. Richman*, for appellee.

DAY, J.—I. We do not deem it necessary, in this case, to determine as to the correctness of the first conclusion of law of the referee.

If it should be conceded that, in the absence of any contract, receipt or regulation, the full liabilities of common carriers

1. COMMON carrier: railroad: transportation of stock.

do not exist with respect to railroads, when engaged in the transportation of live stock, there is, notwithstanding, no principle of law, which, in the absence of contract, exonerates them, when engaged in such employment, from the exercise of ordinary care.

II. The regulations for the transportation of live stock, attached to the contract signed by plaintiff and defendant, and 2. ——: con- constituting a part of it, provide that stock will tract: nudum pactum. only be taken by the car load, when a contract is executed by the special agent and shipper. Plaintiff had before shipped upon defendant's road, and knew of these regulations. He had, therefore, a right to expect that none of his cars of cattle would be forwarded until the shipping contract was signed, and further, as he intended to accompany them, that they would all be shipped in one train, or in such manner that he could have an agent in charge of each lot. The four cars were in fact shipped whilst he was engaged in loading some of the cars, before the contract was signed, and without any notice to plaintiff. He had no opportunity to send anyone in charge of these cars to take care of the cattle. The company did not have any one in charge of the cattle in these four cars.

The referee has found as a fact that the plaintiff was prevented from accompanying the cars by the negligence of defendant, and that, the plaintiff being prevented from having any one in charge of said four cars, the defendant did not exercise ordinary care in their transportation. This finding is abundantly sustained by the evidence.

The defendant then must be held liable for the injury resulting, unless exonerated by the shipping contract executed by the parties. We do not deem it necessary here to determine whether this contract is valid under the provisions of Chap. 113, Acts of the 11th General Assembly.

From the whole tenor of this contract, it is apparent that the stipulation that the owner is to assume all risk of injury, or damage that the animals shall do to themselves or to each other, is upon the consideration that the owner or driver shall be permitted to pass on the train with the stock to take care of it.

At the time this contract was signed the four cars in question were on their way to Chicago, with no. one in charge of them.

The condition which became the consideration of the agreement was, therefore, impossible.

The agreement that the company should not be liable for any injuries to the cattle, was, so far as these four cars are concerned, a mere *nudum pactum*, and did not exonerate defendant from the necessity of exercising at least ordinary care.

We conclude, therefore, that the judgment of the court below is right, and should be

AFFIRMED.