THE INSURANCE COMPANY OF NORTH AMERICA *v.* THE LAKE ERIE AND WESTERN RAILROAD COMPANY ET AL.

[No. 17,994.   Filed March 28, 1899.]

CARRIERS.—*Damages by Fire.—Exemption.—Negligence.*—A special contract exempting a carrier from liability for loss or damage caused by fire is valid, but such exemption does not protect the carrier when the fire or the consequent loss is the result of his own negligence. *p. 335.*

SAME. — *Damages by Fire. — Exemption.—Negligence.— Burden of Proof.*—In an action against a carrier for the loss of goods by fire the burden is upon plaintiff to show that the loss was the result of the negligence of the carrier, where by the terms of the bill of lading the carrier was exempted from liability for losses caused by fire. *pp. 335-341.*

NEGLIGENCE.—*Carriers.—Loss of Goods by Fire.*—Placing a car loaded with cotton on a side-track cannot be held to be the proximate cause of the loss of the cotton by fire, where there was no proof that it took fire at that place. *pp. 341, 342.*

SAME.—*Railroads.—Carriers.*—A railroad company is not required to place its cars temporarily standing on side-tracks, within fire and police protection. *p. 342.*

From the Marion Superior Court.   *Affirmed.*

*W. A. Ketcham, Lewis G. Farmer* and *F. E. Matson,* for appellant.

*W. H. H. Miller, Ferdinand Winter, John B. Elam, McCullough & Spaan, A. C. Harris, John E. Iglehart* and *Edwin Taylor,* for appellees.

DOWLING, J.—Suit by the appellant against the Lake Erie and Western Railroad Company, the Evansville and Terre Haute Railroad Company, and the Chicago and Eastern

Illinois Railroad Company, as members of an association known as the "Midland Line," for the loss of fifty bales of cotton shipped under a bill of lading from Memphis, in the state of Tennessee, (U. S. A.) to Liverpool, England.

The Midland Line was an association of steamship and railroad companies acting as common carriers between the points named.

The appellant had issued a policy of insurance upon the cotton, and the property so insured having been destroyed by fire while in transit, appellant was compelled to pay the amount of the risk. Upon such payment, the bill of lading, with all rights of action thereunder, was assigned and transferred to appellant by the owner of the cotton. As such assignee, and claiming to be subrogated to the rights of such owner, the appellant sued to recover damages for the loss of the cotton.

The complaint was in two paragraphs, to the first of which a demurrer was sustained. The answer to the second paragraph was a general denial. The case was tried by a jury, and, at the conclusion of the evidence, the court refused to give any of the instructions asked for by appellant, and directed a verdict for appellees. Thereupon judgment was rendered and the insurance company appeals. The only error assigned is that the court erred in overruling the motion of the appellant for a new trial.

The paragraph of the complaint upon which the case was tried sets out the traffic arrangement between the defendants; the shipment of the cotton over defendants' lines under a bill of lading *exonerating appellees from liability in case of the loss of the cotton by fire;* and it alleges the destruction of the cotton *by fire* while in the possession of the Lake Erie and Western Railroad Company, one of the appellees. It charges that the loss of the cotton was occasioned by the negligence of the appellees, and states with some particularity, the circumstances under which the fire occurred. The other

facts necessary to show a right of action in appellant are fully and properly pleaded.

That part of the contract in the bill of lading which limited the liability of the appellees, was in these words: "(1) That the said Midland Line shall not be liable for * * * loss or damage by fire. * * * It is also mutually agreed that the carrier shall not be liable for loss or damage occasioned * * * by fire from any cause, or wheresoever occurring."

It is settled by the decisions in this State that the carrier may by a stipulation contained in the bill of lading limit, to some extent, his strict common law liability. *Adams Express Co.* v. *Fendrick,* 38 Ind. 150; *St. Louis, etc., R. Co.* v. *Smuck,* 49 Ind. 302; *Bartlett* v. *Pittsburgh, etc., R. Co.,* 94 Ind. 281; *Rosenfeld* v. *Peoria, etc., R. Co.,* 103 Ind. 121, 53 Am. Rep. 500. He cannot, however, by contract, exempt himself from liability for loss or damages resulting from his own negligence. *Michigan, etc., R. Co.* v. *Heaton,* 37 Ind. 448, 10 Am. Rep. 89; *Indianapolis, etc., R. Co.* v. *Allen,* 31 Ind. 394; *Ohio, etc., R. Co.* v. *Selby,* 47 Ind. 471, 17 Am. Rep. 719; *Indianapolis, etc., R. Co.* v. *Cox,* 29 Ind. 360.

It has often been held that a special contract relieving the carrier from responsibility for loss or damage by *fire* is valid, but it is generally understood that such exemption from liability does not protect the carrier when the fire or the consequent loss is the result of his own negligence. 4 Elliott on Railroads, section 1508, note 3.

The effect of a special contract limiting the common law liability of the carrier is to change the character of that liability by removing from it the important element of insurance of the goods by the carrier, and to place his responsibility for loss or damage upon the ground of *negligence* alone. The carrier does not, indeed, cease to be a carrier, but he is no longer an insurer. In numerous cases he is held, under such circumstances, to be a private carrier for hire, and hence sub-

ject to an entirely different rule from that which would have fixed his responsibility if no special contract had been made.

The controlling question in the present case is as to the burden of proof. On this subject there is an irreconcilable conflict among the decisions, and it would be a fruitless task to institute a comparison between them. The great weight of modern authority, and, as we think, the better reason sustain the rule that where the action is upon a bill of lading which limits the liability of the carrier by excepting certain perils, and it appears that the loss was within the restrictions of the special contract, the burden is upon the *plaintiff* to show that the accident or loss was the result of the negligence of the carrier.

This rule was long ago adopted by the English courts.

In *Harris* v. *Packwood*, 3 Taunt. 264, the carrier had given notice that he would not be accountable for any package whatsoever, above the value of twenty shillings, unless entered, and an insurance paid over and above the price charged for carriage according to value, no such insurance having been paid by the plaintiff. It was said by Mansfield (Sir J.) Ch. J.: "However, we may wish the law to be, we cannot make it different than as we find it. In looking into the books, we find the special acceptance much older than I had supposed it to be. And it leads to great frauds, for on account of the number of persons always attending about these open wagon-yards and offices, every person standing around is apprised that this or that parcel contains watches or jewels to the amount of many hundred pounds; this is a great inconvenience, but however inconvenient it is, it seems that from the days of *Aleyn* down to this hour, the cases have again and again decided that the liability of a carrier may be so restrained; then the question is, whether this loss is within the contract that has been made, and, it seems, according to one or two of the cases, that it is not; for the losses have been of a very suspicious nature; in one case, the parcel seems to have been lost before it left the yard but, however, as there

was no proof here of express negligence, it seems that there must be a rule absolute for a nonsuit."

In *Marsh* v. *Horne,* 5 Barn. & Cress. 322, Abbott, C. J., said: "A person may engage to place goods in a course of conveyance and delivery, and yet declare that he will not be answerable for their loss. Indeed, this argument would altogether defeat the notices given by carriers, which have now prevailed in practice for so many years, and been recognized by so many decisions. And considering the notice given in the present case, we think the defendant could not upon the delivery of the goods have maintained a charge for any sum beyond the reasonable price of carriage, *exclusive of the responsibility of the risk for loss.* And as to the first point made in the argument, it may with equal propriety be said that the plaintiff, who was informed of the defendant's advertisement, and did not offer to comply with its terms, *chose to stand his own insurer,* as that the defendant, who knew the value of the goods to exceed five shillings, and did not demand to be paid for insurance, engaged, nevertheless, to take a responsibility upon himself and indemnify the plaintiff."

In *Muddle* v. *Stride,* 9 Car. & P. 380, which was an action against the proprietors of a steam vessel to recover damages for goods sent by such vessel and lost, Lord Chief Justice Denman, in summing up to the jury, observed that the jury were "to see clearly that the defendants were guilty of negligence before they could find a verdict against them."

Many cases in the Supreme Court of the United States hold that, when the loss falls within the exception in the bill of lading or contract of the carrier, the *onus probandi* is upon the shipper to show negligence on the part of the carrier.

*Clark* v. *Barnwell,* 12 How. 272: "After the damage to the goods, therefore, has been established, the burden lies upon the respondents to show, that it was occasioned by one of the perils from which they were exempted by the bill of lading, and, even where evidence has been thus given bring-

ing the particular loss or damage within one of the dangers or accidents of the navigations, it is still competent for the shippers to show that it might have been avoided by the exercise of reasonable skill and attention on the part of the persons employed in the conveyance of the goods; for, then, it is not deemed to be, in the sense of the law, such a.loss as will exempt the carrier from liability, but rather a loss occasioned by his negligence and inattention to his duty. Hence it is, that, although the loss occurs by a peril of the sea, yet if it might have been avoided by skill and diligence at the time, the carrier is liable. But in this stage and posture of the case, the burden is upon the plaintiff to establish the negligence, as the affirmative lies upon him."

In *Transportation Co.* v. *Downer,* 11 Wall. 129, Field J., delivering the opinion of the court, said: "On the trial the plaintiff made out a *prima facie* case by producing the bill of lading, showing the receipt of the coffee by the company at New York, and the contract for its transportation to Chicago, and by proving the arrival of the coffee at the latter place in the propeller Brooklyn in a ruined condition, and the consequent damages sustained. The company met this *prima facie* case by showing that the loss was occasioned by one of the dangers of lake navigation." (The bill of lading, given by the company, exempted it from liability for losses by dangers of navigation on the lakes and rivers.) "These terms, 'dangers of lake navigation,' include all the ordinary perils which attend navigation on the lakes, and among others, that which arises from shallowness of the waters at the entrance of harbors formed from them. The plaintiff then introduced testimony to show that this danger, and the consequent loss, might have been avoided by the exercise of proper care and skill on the part of the defendant. If the danger might have been thus avoided, it is plain that the loss should be attributed to the negligence and inattention of the company, and it should be held liable, notwithstanding the exception in the bill of lading. The burden of establishing such negligence

and inattention rested with the plaintiff, but the court refused an instruction to the jury to that effect, prayed by the defendant, and instructed them that it was the duty of the defendant to show that it had not been guilty of negligence. In this respect, the court erred."

See, also, 5 Am. & Eng. Enc. Law (2nd ed.) p. 360, and cases decided by federal courts, collected in note 1.

The same views have been expressed by many of the state courts in carefully prepared opinions, among which may be named: *Lamb* v. *Camden, etc., R. Co.,* 46 N. Y. 271, 7 Am. Rep. 327; *Cochran* v. *Dinsmore,* 49 N. Y. 249; *Whitworth* v. *Erie, etc., R. Co.,* 87 N. Y. 413; *Farnham* v. *Camden, etc., R. Co.,* 55 Pa. St. 53; *Colton* v. *Cleveland, etc., R. Co.,* 67 Pa. St. 211, 5 Am. Rep. 424; *Patterson* v. *Clyde,* 67 Pa. St. 500; *Pennsylvania Co.* v. *Raiordon,* 119 Pa. St. 577, 4 Am. St. 670; *Buck* v. *Pennsylvania R. Co.,* 150 Pa. St. 171, 24 Atl. 678, 30 Am. St. 800; *Smith* v. *American Express Co.,* 108 Mich. 572, 66 N. W. 479; *Read* v. *St. Louis, etc., R. Co.,* 60 Mo. 199; *Kallman* v. *United States Ex. Co.,* 3 Kan. 205; *New Orleans, etc., Ins. Co.* v. *New Orleans, etc., R. Co.,* 20 La. Ann. 302; *Wilson* v. *Southern Pacific, etc., R. Co.,* (Cal.) 7 Am. & Eng. R. Cas. 400; *Louisville, etc., R. Co.* v. *Manchester Mills,* 88 Tenn. 653, 14 S. W. 314; *Sager* v. *Portsmouth, etc., R. Co.,* 31 Me. 228, 1 Am. Rep. 659; *Mitchell* v. *United States Ex. Co.,* 46 Iowa 214; *Kansas, etc., R. Co.* v. *Reynolds,* 8 Kan. 623; *Smith* v. *North Carolina R. Co.,* 64 N. C. 235; *Little Rock, etc., R. Co.* v. *Talbot,* 39 Ark. 523. See also Hutch. on Carr., section 767; Ang. on Carr., 276; 4 Elliott on Railroads, section 1516, p. 2347.

The question as to the burden of proof in such cases, so far as we have been able to discover, has not been directly decided by the Supreme Court of this State. In *Adams Express Co.* v. *Fendrick,* 38 Ind. 150, the court say (Worden J.): "We need not determine whether, in such case, the burthen of proving negligence on the part of the carrier devolves upon the shipper or consignee, or whether the burthen

of disproving it devolves upon the carrier. The paragraph of the answer we deem good on either theory, inasmuch as it sets up the loss in such manner as, *prima facie*, at least, excludes the inference of negligence on the part of the defendant."

The opinion in the case of the *Terre Haute, etc., R. Co.* v. *Sherwood*, 132 Ind. 129, 7 L. R. A. 339, quotes with approval the rule hereinbefore stated concerning the burden of proof as laid down in Wheeler on Carr. 252, and Hutch. on Carr. (2nd. ed.) sections 259 and 736; but, as the property, the loss of which was the subject of controversy in that case, was live stock, and the question here presented was not directly involved, it cannot be said that the point, as to the burden of proof, was decided.

In *Indianapolis, etc., R. Co.* v. *Forsythe*, 4 Ind. App. 326, it is held that, in an action upon a bill of lading exempting the carrier from liability as to a particular peril, the burden of showing negligence is upon the plaintiff.

The reasons by which the opposite view is maintained, while often plausible, are not always sound. Such as are deduced from the strictness of the common law, touching the liability of the carrier, lose much of their force when it is remembered that at least as early as the year 1648, in England, the carrier was permitted to limit his responsibility. His right to do so, not only by express contract, but by notice to the shipper, and even by public advertisement, is recognized in numerous cases.

Much of that strictness, too, was due to the condition of society; to the wild and unsettled state of the country; the frequency of highway robberies; the absence of police protection; the crude methods of carrying on business; the circumstance that goods were usually transported across the country in stages, and other like vehicles, inadequately equipped and insufficiently guarded; and the disreputable character and dishonest practices of many of those engaged in the business of carriers. Something of this kind is indicated in the

language of Lord Holt, Ch. J., in *Lane* v. *Cotton,* 1 Salk. 17, where he says: "It is a hard thing to charge a carrier; but if he should not be charged, he might keep a correspondence with thieves, and cheat the owner of his goods, and he should never be able to prove it."

It appears also from the statement of Mansfield (Sir J.) Ch. J. in *Harris* v. *Packwood,* 3 Taunt. 264, where he says: "And it leads to great frauds, for on account of the number of persons always attending about these open wagon-yards and offices, every person standing around is apprised that this or that parcel contains watches or jewels to the amount of many hundred pounds."

The extreme illustrations made use of in many opinions prove nothing. If such cases occur, they are exceptional, and afford no foundation for a general rule. The occurrence of the accidents and perils by which goods are damaged or lost while being transported overland, or on the rivers, lakes, or seas, is usually open and notorious. Knowledge of the facts is seldom confined to the carrier, or to a few agents who are subservient to his interests and subject to his control. The persons employed upon a railroad, or engaged in navigating a vessel, are not generally disposed to shield their employer by sinister means, and are probably quite as often subject to the charge of undue prejudice against him as of undue partiality toward him.

Neither is any serious danger to be apprehended from the imposition of unfair and unjust terms upon the shipper by the carrier. The form and conditions of the contracts of the carrier are in most cases subject to legislative control, and it is to be presumed that, whenever it becomes necessary to protect the people of the State from imposition, the legislative remedy will be applied.

The second paragraph of the complaint expressly charged that the destruction of the cotton was caused *by the negligence* of the appellees in exposing it to the danger of fire on the side-track of the Lake Erie and Western Railroad Com-

pany, near Lafayette, Indiana, at a point where trains were constantly passing, and where there was no fire or police protection. Having alleged negligence, the plaintiff would probably be required to prove it, even if the allegation were unnecessary. Gould's Pl. (4th ed.) chapter 3, sections 185, 186 and 187.

But, upon this branch of the case, we find no evidence that the position of the car in which the cotton was stored was the proximate cause of the fire and loss, or, indeed, that it had anything to do with it. There was no proof that the cotton took fire at that place. For all that appeared, the cotton may have been burning inside the bales, or between the bales, for days before. It was not proved how, where or when the fire was communicated to the cotton. It would be the merest conjecture to say that it took fire at the place where it was actually burned. This substance is known to be highly inflammable, and it is peculiarly liable to destruction by this peril at all times, and at all places, while being transported by railroad. For this very reason the appellees refused to be responsible for a loss occasioned by fire, and the bill of lading so stated. The shipper became his own insurer. We do not think a railroad company can be expected to place its cars, when temporarily standing on side-tracks, in such situations that they can be watched by policemen, or be within reach of fire engines or other means for extinguishing fires.

As the evidence would not have sustained a verdict for appellant, the court did right in directing the jury to return a verdict for appellees.

There being no error in the record, the judgment is affirmed.