LAKE ERIE & WESTERN RAILROAD COMPANY ET AL. *v.* HOLLAND.

[No. 20,152. Filed November 24, 1903. Rehearing denied March 31, 1904.]

CARRIERS.—*Injury to Live Stock.*—*Pleading.*—*Recovery.*—Applying the rule that a plaintiff must recover in accordance with the allegations of his complaint, a suit against a common carrier for breach of its common law duty in the transportation of live stock must fail upon proof that the shipment was made under a special contract. *p. 411.*

SAME.—*Carriage of Live Stock.*—*Contract Limiting Common Law Liability.*—*Consideration.*—A contract qualifying the responsibility imposed upon the carrier by the common law must be supported by a valuable consideration apart from the mere acceptance of the property for carriage. *pp. 411, 412.*

SAME.—*Carriage of Live Stock.*—*Contract Limiting Common Law Liability.*—*Consideration.*—*Reduction of Freight Charges.*—While a reduction in the usual freight charges is a sufficient consideration for a contract limiting the liability of the carrier of live stock, such concession must be actual, and not fictitious, and a mere recital or acknowledgment in the bill of lading that such abatement has been made and accepted is not conclusive, but the real transaction is always open to explanation and contradiction by parol. *p. 412.*

Lake Erie, etc., R. Co. v. Holland.

CARRIERS.—*Carriage of Live Stock.*—*Contract Limiting Common Law Liability.* —*Consideration.*—*Complaint.*—A complaint against a common carrier for damages to live stock in transit, alleging that there was no choice of rates, no reduction in the usual freight charges, and no consideration for a waiver of defendant's legal liability, was sufficient to show that there was no valid contract to accept a qualified responsibility from defendants. *pp. 412, 413.*

SAME.—*Carriage of Live Stock.*—*Inspection of Car by Shipper.*—*Hidden Defects.*—Proof that a carrier knew that a car selected by a shipper was unsound and unsafe, and that the shipper failed to discover such unsoundness by reason of the defects being hidden, would charge the carrier with the damages accruing from such defective car. *pp. 413, 414.*

SAME.—*Duty to Furnish Proper Car.*—*Negligence.*—*Carrier can not Contract Against.*—The duty to furnish a proper car for the shipment of live stock rests upon the carrier, and not upon the shipper, and the failure to discharge such duty is negligence from the consequences of which the carrier can not free itself by contract or otherwise. *pp. 413, 414.*

PLEADING.—*Anticipating Defense.*—Under the rule that a complaint, to be good at common law, or under the code, must contain a clear statement of all the facts necessary for the plaintiff to prove in the first instance, under an answer of general denial, to show that he is entitled to a judgment, a necessary and incidental disclosure of a defense in stating a cause of action is permissible, and will not be regarded as anticipating a defense. *pp. 414, 415.*

CARRIERS.—*Invalid Contract.*—*Pleading.*—Where a complaint against a carrier for damages to live stock in transit charged that plaintiff was obliged to execute a contract limiting the liability of the defendant and alleged facts showing that the contract in this respect was without consideration, and void, it can not be said that the complaint was founded on a written contract. *p. 415.*

APPEAL AND ERROR.—*Instructions.*—Spreading requested instructions upon the court's minutes and copying them into the transcript by the clerk of his own motion gives the Supreme Court no authority to consider them on appeal. *pp. 415, 416.*

SAME.—*Instructions.*—*When not all in Record.*—Where it is not affirmatively shown on appeal that the record contains all of the instructions given, it will be presumed that the substance of instructions asked and refused was embraced in charges given by the court and not contained in the record, and that objectionable instructions given by the court of its own motion, and set out in the record, were corrected or withdrawn in others given and not embraced in the record. *pp. 416, 417.*

From Superior Court of Marion County (58,701); *J. M. Leathers,* Judge.

Action by Frank H. Holland against the Lake Erie & Western Railroad Company and others. From a judg-

ment for plaintiff, defendants appeal.    Transferred from Appellate Court, under §1337o Burns 1901.    *Affirmed.*

*J. B. Cockrum, W. H. H. Miller, J. B. Elam, J. W. Fesler* and *S. D. Miller*, for appellants.

*C. E. Barrett, E. A. Brown, Ralph Bamberger* and *Isidore Feibleman*, for appellee.

HADLEY, J.—Appellee, at Kokomo, Indiana, delivered to the Lake Erie & Western Railroad Company, and associate public carriers, twenty horses to be transported to the Union Stock-yards in the city of Indianapolis.    A written and printed bill of lading was executed by the parties, and the stipulated freight paid by appellee.    The animals were unaccompanied by an attendant, and on the journey a hole eight by fourteen inches was broken in the bottom of the car, through which ten of the horses dropped some of their feet, and were injured, for which damage is claimed by appellee.

The complaint is in three paragraphs.    The first counts upon the common law liability of appellant as an insurer of the safe delivery of the property at the point of destination.    To the first paragraph of the complaint appellants filed a general denial.    The second, in substance, charges the public character of appellants, and that at the time of the shipment, and for a long time theretofore, the appellants had one and only one rate of freight for the transportation of horses in car-load lots from Kokomo to Indianapolis, to wit, eleven cents per one hundred pounds, and had only one form of contract for the transportation of such animals; that appellee applied to appellants' agent at Kokomo to ship a car load of horses from that place to Indianapolis, and, before appellants would undertake to carry them, they required appellee, as a condition precedent thereto, to enter with them into a contract on their printed form, a copy of which is made a part of the complaint, and so much thereof as is important in this inquiry fol-

lows: "Limited liability live stock contract.     *     *     *
This agreement made this 25th day of March, 1899, by
and between [appellants and appellee] witnesseth, that the
said shipper has delivered to said carrier live stock of the
kind and number, and consigned and destined by said ship-
per as follows:     *     *     *     for transportation from Kokomo
to Indianapolis     *     *     *     subject to the official tariffs
*     *     *     and upon the following terms and conditions
which are admitted and accepted by said shipper as just
and reasonable, viz.: that said shipper is to pay freight
thereon to said carrier at the rate of eleven cents per one
hundred pounds from Kokomo to Indianapolis which is the
lower published tariff rate based upon the express condition
that     *     *     *     said shipper is, at his own sole risk and ex-
pense, to load and take care of, and to feed and water said
stock while being transported     *     *     *     and to unload the
same, and neither said carrier nor any connecting carrier is
to be under any liability or duty with reference thereto, ex-
cept in the actual transportation of the same; that said ship-
per is to inspect the body of the car in which said stock is
to be transported, and satisfy himself that it is sufficient
and safe, and in proper order and condition, and said car-
rier shall not be liable on account of any loss of, or injury
to, said stock, happening by reason of any alleged insuffi-
ciency in, or defective condition of, the body of said car,
*     *     *     and F. H. Holland [appellee] hereby acknowl-
edges that he had the option of shipping the above de-
scribed live stock at a higher rate of freight according to
the official tariff, classifications, and rules of said carrier,
and thereby receiving the security of the liability of said
carrier, but has voluntarily decided to ship the same under
this contract at the reduced rate of freight above men-
tioned."

Appellee was to send an attendant with the horses to
feed, water, and care for them while in transit.  The com-
plaint avers that appellee being thus obliged to execute said

contract to secure the transportation of his horses, signed it, and paid the stipulated freight, and appellants thereupon took sole possession of the animals, and undertook to transport them to Indianapolis; that although it was stated in said contract that the plaintiff had the option of choosing between two rates of freight—the higher furnishing a higher degree of security, and the lower a less degree—and that he voluntarily elected the lower rate, the fact is that no such option was offered him, nor did he have any knowledge that he could exercise such option, nor did appellants have a schedule rate of freight for such purposes, and each and every one of the exemptions from liability of appellants were exacted by them as a condition to said shipment, and inserted in said contract without any consideration; that, in pursuance of the contract, appellee loaded his horses into a car designated by appellants; that, because of the short distance and the time necessary, to wit, three hours, to transport the said horses to their destination, they needed no food, water, or care *en route;* that while in transit a part of the floor of the car, by reason of latent defects in its construction, and by reason of being decayed and unsound, which defective and unsound condition was at the time of the shipment known to appellants, broke through, producing a hole eight by fourteen inches in size, by reason of which breaking of the floor ten of appellee's horses fell with their feet and legs through said hole, and were thereby injured.    The third paragraph is like the second, with the additional averments that when appellee applied to appellants' agent for a car he was shown and required to choose between two cars; that one of these was wholly unfit, on account of ice frozen over the floor; that appellee inspected the other, and it appeared to be sound and safe, and he believed it to be sound and fit for the carriage of his horses.  It is further charged that appellants knew that the car floor was decayed, weak, and un-

sound, and on account of which unsoundness the horses were injured.

A demurrer to each of the second and third paragraphs was overruled, and the defendants answered by general denial. Trial; verdict and judgment for appellee. The rulings of the court upon the demurrers, and in overruling appellants' motion for a new trial, are properly questioned.

1. The general assault upon these paragraphs is that, being suits upon a special contract, they each fail to disclose an actionable breach of the contract sued on; the argument being that as the paragraphs imperfectly count upon the violation of an express contract there can be no recovery upon a contract implied. We readily acknowledge the rule to be that, if a plaintiff recover, he must do so upon and in accordance with the allegations of his complaint; and, in the application of this rule, a suit against a common carrier for a breach of its common law duty in the transportation of live stock must fail upon proof that the shipment was made under a special contract. *Lake Shore, etc., R. Co.* v. *Bennett,* 89 Ind. 457; *Hall* v. *Pennsylvania Co.,* 90 Ind. 459. And *vice versa, Fry* v. *Louisville, etc., R. Co.,* 103 Ind. 265.

But are these actions upon a special agreement within the purview of the rule? As we understand the paragraphs —and there is really no difference between them in respect to the general questions—they proceed upon the theory that the plaintiff was compelled by his situation to assent to what purports to be a special contract of carriage under such circumstances and conditions as render the special stipulations void. He alleges that he did not choose between two rates of freight; that he did not know he had a right so to choose; that appellants had no such thing as two rates of freight for the transportation of car loads of horses from Kokomo to Indianapolis; that he was required by appellants to sign the bill of lading exhibited, exempt-

ing them from liability, as a condition precedent to the shipment of the horses; and that he received no consideration for relieving appellants of their common law duty.

It is well settled that a public carrier may, to some extent, limit by stipulation in the bill of lading his strict common law liability. *Insurance Co.* v. *Lake Erie, etc., R. Co.,* 152 Ind. 333. But it is equally well settled that a contract qualifying the responsibility imposed upon the carrier by the common law must be supported by a valuable consideration, apart from the mere acceptance of the property for carriage. *Rosenfeld* v. *Peoria, etc., R. Co.,* 103 Ind. 121, 53 Am. Rep. 500; *German* v. *Chicago, etc., R. Co.,* 38 Iowa 127; *Wehmann* v. *Minneapolis, etc., R. Co.,* 58 Minn. 22, 59 N. W. 546; *Southard* v. *Minneapolis, etc., R. Co.,* 60 Minn. 382, 62 N. W. 442; *McFadden* v. *Missouri Pac. R. Co.,* 92 Mo. 343, 4 S. W. 689, 1 Am. St. 721; *Potter* v. *Sharp,* 24 Hun 179; *Gardner* v. *Southern R. Co.,* 127 N. C. 293, 37 S. E. 328; *Schaller* v. *Chicago, etc., R. Co.,* 97 Wis. 31, 71 N. W. 1042; *Railroad* v. *Gilbert,* 88 Tenn. 430, 12 S. W. 1018, 7 L. R. A. 162; *Ft. Worth, etc., R. Co.* v. *Wright,* 24 Tex. Civ. App. 291, 58 S. W. 846; *Stewart* v. *Cleveland, etc., R. Co.,* 21 Ind. App. 218, 225.

A reduction in the usual freight rate is a sufficient consideration, but such concession in charges must be actual, and not fictitious; and a mere recital or acknowledgment in the bill of lading that such abatement has been made and accepted is not conclusive, but the real transaction is always open to explanation and contradiction by parol. *McFadden* v. *Missouri Pac. R. Co., supra; St. Louis, etc., R. Co.* v. *Weakly,* 50 Ark. 397, 8 S. W. 134, 7 Am. St. 104; *Georgia R., etc., Co.* v. *Reid,* 91 Ga. 377, 17 S. E. 934; *Baltimore, etc., R. Co.* v. *Crawford,* 65 Ill. App. 113; *Kansas Pac. R. Co.* v. *Reynolds,* 17 Kan. 251; *Missouri, etc., R. Co.* v. *Carter,* 9 Tex. Civ. App. 677, 29 S. W. 565.

Applying these principles to the averments of the com-

Lake Erie, etc., R. Co. v. Holland.

plaint that there was no choice of rates, and no reduction in the usual freight charges, and no consideration for a waiver of appellants' legal liability, it follows, if these things are established, there was no valid contract to accept a qualified responsibility from appellants.

It is contended on the third paragraph that it is bad because it shows that appellee stipulated to inspect and select his own car, and to send an attendant with the stock, and to release appellants' from all liability for damages to the animals, including those resulting from a defective condition of the car; and that, in accordance with the stipulation, he did inspect and select his own car, and that his failure to send a man to care for the stock precludes his recovery for their injury. Again, assuming the special contract as valid (which it was not, as we have seen), appellants extend their argument further than the law will warrant. If, as averred, appellants knew at the time the car selected was unsound and unsafe, and appellee failed to discover such unsoundness by reason of the defects being hidden, and the car appeared to him to be sound and safe, and he believed it to be so, his proof of these facts would charge appellants with the damages accruing therefrom. Freeing themselves by contract from their usual common law duties did not change the true character of their employment. Thy were public carriers still. *Liverpool, etc., Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788; *Terre Haute, etc., R. Co.* v. *Sherwood,* 132 Ind. 129, 17 L. R. A. 339, 32 Am. St. 239. And having accepted appellee's money for the transportation of his horses to Indianapolis, they were bound to furnish a car suitable for the purpose. With the knowledge that the car was unfit and unsafe they could not rest upon appellee's agreement, induced by safe, but false, appearances, to take the risk. The duty to furnish a proper car rested upon the carrier, and not upon the shipper, and the failure to discharge this duty was negligence, from the conse-

quences of which the carrier is not permitted to free itself by contract or otherwise. *Insurance Co.* v. *Lake Erie, etc., R. Co.,* 152 Ind. 333; *Railroad Co.* v. *Pratt,* 22 Wall. 123, 22 L. Ed. 827; *Chicago, etc., R. Co.* v. *Davis,* 159 Ill. 53, 42 N. E. 382, 50 Am. St. 143; *Western R. Co.* v. *Harwell,* 91 Ala. 340, 8 South. 649.

Furthermore, it is alleged that the floor of the car, by reason of being decayed, weak, and unsound, and known to be so by appellants, broke, and the horses were injured by stepping through the hole. If this was the cause of their injury—and it is so admitted by the demurrer—then the animals were not injured for want of feed, water, or care in transit, which appellee agreed to bestow, and appellants would be liable for their negligence in furnishing an unfit car. *Terre Haute, etc., R. Co.* v. *Sherwood, supra.*

We now return to appellants' insistence that appellee's right of recovery is confined to the bill of lading under which the horses were shipped, and which they assert is the foundation of the second and third paragraphs of complaint. We recognize the familiar rule of pleading that a plaintiff should not set forth in his complaint matters that should come more properly from the other side; that a plaintiff should not anticipate the defense, but be content with making his own case, and leave the defendant to choose his own line of defense. Stephen, Pleading (9th Am. ed.), 350; Bliss, Code Pleading, §200. It is also elementary that a plaintiff having suffered an actionable injury must aver in his complaint all the facts essential to a disclosure of his right of recovery, or suffer a nonsuit. In brief, it may be affirmed that a complaint good at common law or under the code must contain a clear statement of all the facts necessary for the plaintiff to prove in the first instance, under an answer of general denial, to show that he is entitled to judgment. And under the operation of this rule, it has been held in some cases, where the relation of the facts seem to require it, that a necessary and inci-

dental disclosure of a defense in stating a cause of action is permissible, and should not be regarded as anticipating a defense, within the rule. *Latta* v. *Miller,* 109 Ind. 302, 306; *Hunt* v. *State, ex rel.,* 93 Ind. 311, 316.

But in this case we are not called upon to define the limits of this rule of pleading. For it is undoubtedly true that a complaint which contains facts sufficient to constitute cause of action is good on demurrer, though it also contains additional immaterial matter. So the mere fact that a complaint otherwise good sets out the defense does not make the pleading bad, if it goes far enough to exhibit sufficient matter in avoidance. *Morgan* v. *Lake Shore, etc., R. Co.,* 130 Ind. 101; *Latta* v. *Miller, supra; Chicago, etc., R. Co.* v. *West,* 37 Ind. 211. We conclude, therefore, that the facts set forth in the second and third paragraphs of the complaint, and which are admitted to be true by the demurrers, show that the pretended special contract of shipment was void, and left the transaction standing precisely as if no contract, other than the one implied by law, had been attempted by the parties. So it can not be accurately said that the paragraphs were founded on a written contract, for no such thing existed in this case. Each of the paragraphs avers the public character of appellants, a delivery to them of the horses for transportation, payment of the freight, negligence in furnishing an unsuitable car, and injury and damages thereby. These facts constitute a good cause of action, and the demurrers were properly overruled. As independent pleadings the latter paragraphs are not invalid because the same things are alleged in the first paragraph.

2. Appellants assail the action of the court in the giving of certain instructions of its own motion, and in refusing to give certain instructions requested by them. The instructions are not brought into the record by bill of exceptions, but are attempted to be brought in by order of the court; the only reference to the subject of instructions

being the following recital of the clerk, and noted copy of entry: "Come again the parties,  *  *  *  and the plaintiff and defendants each file their request for instructions, and, the argument being heard, the court instructs the jury, which retires to consult of the verdict  *  *  *  and the instructions asked and refused and the exceptions noted thereon, and the instructions given by the court of its own motion, are now filed and made a part of the record herein by order of the court, and are as follows, viz."

It will be observed that the clerk informs us that two classes of instructions, namely, those "asked and refused" and those "given by the court of its own motion," were filed and made part of the record by order of court, and which he says "are as follows." Then next appears in the transcript what purports to be three series of instructions— one series requested by the plaintiff, one by the defendants, and one as given by the court of its own motion. Of all those requested by the parties, number one and number six of the series requested by the defendants are the only ones that appear to have been "asked and refused." What went with the instructions requested by the respective parties, and given by the court, is left to conjecture, since it does not appear that they were filed or brought into the record by order of court, or any other method recognized by the law. A spreading of them upon the court's minutes, and a copying of them into the transcript by the clerk of his own motion, amounts to nothing, and gives us no authority to heed them. Here, then, we have a record which affirmatively shows that all of the instructions given by the court are not in the record. We can not, therefore, consider an objection to the giving or refusing to give any instruction that may be properly in the record. The settled rule of this State goes even further than applies to this record, namely, that the record must affirmatively show that it embraces all the instructions given to the jury; and, upon failure to do so, we must presume that the substance

of instructions asked and refused was embraced in charges given by the court, and not contained in the record, and that objectionable instructions given by the court of its own motion, and set out in the record, were corrected or withdrawn in others given and not embraced in the record. *State* v. *Winstandley,* 151 Ind. 495, and cases cited. See, also, *Board, etc.,* v. *Gibson,* 158 Ind. 471, 490.

It is suggested, but not argued, that the court erred in permitting an agent of the consignee of the horses to testify, as a witness for appellee, to what was said over the telephone between him and some one whose voice was not recognized, but who answered a call for appellants at their office in Indianapolis. The substance of the communication is that the witness notified the person who answered for appellants that the car floor had broken and some of appellee's horses had been injured, and appellants should give the matter attention, and the response over the wire was that they would send a man over and attend to the matter. We need not decide whether or not the evidence was competent, since-it is apparent that appellants could not have been injured by anything said over the telephone.

Judgment affirmed.